**People of the State of Illinois, Plaintiff-Appellee, v. Sotirios T. Manikas, Defendant-Appellant.**

**Gen. No. 68–87.**

Second District.

February 25, 1969.

Rehearing denied and supplemental opinion April 1, 1969.

Klein, Thorpe, Kasson and Jenkins, of Chicago (Constance Kasson, of counsel), for appellant.

William V. Hopf, State's Attorney of Du Page County, of Wheaton, and J. Michael Fitzsimmons, Jr., Assistant State's Attorney, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The defendant, who was charged with having committed the offense of driving while his operator's license was revoked, in violation of section 6–303 of the Illinois Motor Vehicle Act (Ill Rev Stats 1965, c 95½, par 6–303), waived his right to trial by jury, was tried by the court, found guilty and sentenced to ten days in the county jail, with credit for three days, considered as served. He appealed from this judgment.

He was arrested on the East-West Tollway in Du Page County and was issued a traffic ticket and complaint charging him with the violation of section 6–119(d) of the Act (Ill Rev Stats 1965, c 95½, par 6–119(d)) in that he was driving in violation of the restrictions imposed by his restricted driver's permit. One week later, the arresting officer filed the complaint under which the defendant was tried and sentenced, and thereafter, the complaint, charging a violation of section 6–119(d) of the Act, was dismissed.

At the trial, the People offered, and the court admitted in evidence, a certificate of the Secretary of State (herein called Secretary) which set forth the defendant's record with reference to the status of his operator's license. It reflected that his license had been revoked on August 5, 1965; that a restricted driver's permit was issued to him on October 6, 1965, to expire October 6, 1966; that the Secretary received a report of the defendant's conviction of a motor vehicle violation, and on December 20, 1965, extended the revocation of the defendant's operator's license until August 5, 1967; and that the defendant did not have a valid operator's license on the date of said certificate: August 23, 1966. The arresting officer testified on behalf of the People.

The defendant did not testify, but did offer—and the court received in evidence—a copy of his restricted driving permit which carried an expiration date of October 6, 1966. It reflected that the restrictions permitted the defendant to operate his car between the hours of 9:00 a. m. and 1:00 p. m., and 5:00 p. m. and 9:00 p. m., Monday through Saturday of each week, within the Chicago area, for his transportation while performing his duties as an insurance salesman.

It was 10:25 p. m., on August 6, 1966, when the defendant was arrested. He had visited his father in Aurora and, at the time of his arrest, was en route to Chicago. It would, thus, appear that he was then and there in violation of both the time and place restrictions specified in his driving permit.

Upon appeal, the defendant contends that his conviction for driving while his operator's license was revoked is not authorized by section 6–303 of the Act since that section exempts from its provisions, any person who is allowed to drive by a restricted driving permit; that the complaint under which he was convicted failed to set forth the nature and elements of the offense of driving in violation of the restrictions which were imposed; and that the court erred in admitting into evidence the said Secretary's certificate.

The People contend that the issuance of a restricted driving permit to a person whose operator's license has been revoked, suspends the terms of such revocation only during the times and under the circumstances specified in the restricted permit; and that at all other times, the revocation is in full force and effect.

Section 6–303 of the Illinois Motor Vehicle Act provides that any person who drives a motor vehicle on any highway of this State at a time when his operator's license is revoked as provided under the Act, except as may be allowed by a restricted driving permit issued under this Act, shall be punished by imprisonment for

not less than seven days nor more than one year and there may be imposed in addition a fine of not more than $1,000.

Section 1–157 of the Act defines the terms, "Revocation of operator's . . . license" as follows:

> "The termination by formal action of the Secretary of a person's license . . . to operate a motor vehicle on the public highways, which termination shall not be subject to renewal or restoration except that an application for a new license may be presented and acted upon by the Secretary after the expiration of at least one year after the date of revocation."

Section 6–208(b) of the Act states that once an operator's license has been revoked, he is not entitled to have it renewed or restored, but rather, he may apply to the Secretary for a new license, after the expiration of at least one year from the date of revocation.

Section 6–205 of the Act provides for the mandatory revocation of an operator's license upon the Secretary receiving a report of the operator's conviction of the offenses therein listed. And, section 6–206 thereof provides for the discretionary revocation by the Secretary, of an operator's license under the circumstances therein enumerated. Each of said sections authorizes the Secretary to issue a driving permit to a person whose operator's license has been revoked, which will grant to him the privilege of driving his car between his residence and place of employment or other proper limits, in order to prevent undue hardship; and each section provides:

> "A restricted driving permit issued hereunder shall be subject to cancellation, revocation and suspension by the Secretary of State in like manner and for like cause as an operator's or chauffeur's

319

license issued hereunder may be cancelled, revoked or suspended; except that a conviction upon one or more offenses against laws or ordinances regulating the movement of traffic shall be deemed sufficient cause for the revocation or suspension of a restricted driving permit."

Under the provisions of section 6–210 of the Act, any person whose operator's license has been revoked shall not drive a motor vehicle on a public highway in Illinois after such revocation, until an operator's license has been obtained as permitted under the Act, except as permitted by a restricted driver's permit issued under the provisions of section 6–205(a).

It is apparent from these provisions, when read together, that it was the intention of the legislature that there should be no automatic restoration of an operator's license after the one-year period of its revocation, or after such revocation as extended; and that the issuance of a restricted driving permit to a person whose operator's license has been revoked, does not ipso facto restore or renew the operator's license which has been revoked, but rather, such driver's permit authorizes the licensee to drive a car upon the highways of the State, subject to the restrictions provided therein, and not otherwise. A driver's permit is not an operator's license, rather, it is a special type of permit issued to a driver whose operator's license has been revoked, in order that he may drive his car subject to the restrictions specified and thereby avoid the undue hardship which would otherwise be imposed upon him and his family. If the restricted driver violates the restrictions specified in the permit, the permit may be revoked by the Secretary.

In the light of these statutory provisions, we believe it was the obvious intent of the legislature that a driver—whose operator's license has been revoked and to whom a restricted driving permit has been issued—

who drives in violation of the restrictions imposed by the permit, is guilty of the offense of driving while his operator's license is revoked. We find no ambiguity in this legislation.

The defendant's operator's license was revoked. He was granted a restricted driving permit to alleviate a hardship situation. He was permitted to drive in accordance with the restrictions of his permit. Under the provisions of section 6–303 of the Act, any person who drives a motor vehicle on the public highways while his operator's license is revoked except as may be allowed by a restricted driving permit, shall be punished as provided therein.

Section 6–119 of the Act authorizes the Secretary, for good cause shown, to impose restrictions suitable to the licensee's driving ability, with respect to the type of, or special mechanical control device required on, a motor vehicle which the licensee may operate, or such other restrictions applicable to the licensee as the Secretary may determine to be appropriate to assure safe operation of the vehicle by the licensee. The defendant in the case at bar was not under a restriction with reference to any mechanical control which was applicable to him by virtue of some physical handicap. Consequently, section 6–119 had no application or pertinency in the case at bar.

The defendant also urges that the complaint against him failed to set forth the nature and elements of the offense with which he was charged. It read,

> "that at or about the hour of 10:25 P. M. on or about the 9th day of August A. D. 1966 in said County and State Sotirios T. Manikas hereinafter called the defendant committed the offense of driving while license revoked in violation of Section 6–303 of Chapter 95½ of the Illinois Revised Statutes of said State, in this, to wit; That the said defend-

ant operated a motor vehicle, to-wit; a 1966 Chevrolet bearing 1966 Illinois motor vehicle registration number PD2497, along and upon the East-West Tollway at or near milepost 11½; that at said time and place defendant was operating a motor vehicle while his operator's license was revoked."

The defendant was not charged with the violation of the restrictions of his driving permit; he was charged with operating a motor vehicle while his operator's license was revoked. At no time did he file a motion for a bill of particulars pursuant to section 114-2 of the Code of Criminal Procedure (Ill Rev Stats 1965, c 38, par 114-2).

■ We are of the opinion that the complaint was sufficiently specific to inform the defendant of the nature of the charge that he was called upon to defend, and that the record of his conviction is a bar to a subsequent prosecution for the same offense. See: People v. Crockett, 41 Ill2d 226, 242 NE2d 235, 236, 237 (1968); People v. White, 24 Ill App2d 324, 329–332 incl., 164 NE2d 823 (1960).

■ The defendant also urges that the trial court erred in admitting into evidence, on behalf of the People, the certificate of the Secretary relative to the status of his operator's license. Duly authenticated or certified copies, or transcripts of public records, are admissible in evidence whenever the originals thereof would be admissible. People v. White, supra, 333.

Section 6-123 of the Act provides that "The Secretary of State shall maintain appropriate records of all licenses and permits refused, cancelled, revoked or suspended and of the revocation and suspension of driving privileges of persons . . . ." Section 6-124 provides that the Secretary may furnish, upon request, an abstract of a driver's record.

■ A certified copy of these records of the Secretary, maintained pursuant to statutory mandate, under his signature and seal, are admissible in evidence. Thus, the trial court properly admitted into evidence the Secretary's certificate relative to the status of the defendant's operator's license. People v. White, supra, 333.

Section 6–303 of the Act was amended in 1967 by adding thereto a provision that "an abstract issued by the Secretary of State pursuant to section 6–124 . . . on request of a law enforcement agency, for the record of a named person as to the status of his motor vehicle operator's license shall be prima facie evidence of the facts therein stated . . . ."

In Lubezny v. Ball, 389 Ill 263, 59 NE2d 645 (1945), at page 266 the court stated:

> "In ascertaining the meaning and intent of the General Assembly in the construction of statutes, where no specific provision appears to aid such construction, recourse may be had to the language of subsequent acts of the same lawmaking body."

If any question ever existed as to the propriety of admitting the Secretary's certificate in evidence, it was removed by the amendment to section 6–303.

■ The defendant offered no rebuttal evidence to the record of the Secretary. He did not attempt to prove that he was driving in accord with the restrictions contained in his restricted driving permit. The evidence was sufficient to prove the identity of the defendant, establish the corpus delicti, and to prove that the defendant was guilty beyond a reasonable doubt.

■ On review, we will not disturb the judgment finding the defendant guilty on the basis that the evidence is not sufficient to convict, unless the evidence is so palpably contrary to the judgment, or unreasonable,

improbable or unsatisfactory as to justify entertaining doubt as to the defendant's guilt. Such doubt does not exist in the case at bar. Consequently, the judgment of the trial court is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and SEIDENFELD, J., concur.

### Supplement to Opinion on Denial of Petition for Rehearing

On petition for rehearing, the defendant strenuously contends that "the complaint failed to set forth the nature and elements of the offense of driving while license revoked in that it failed to allege that with respect to each element described by the statute defining the offense of driving while license revoked, the defendant acted while having one of the mental states required by the Criminal Code of 1961."

The complaint is set forth verbatim in the opinion.

The rationale of the defendant is that:

"A 'charge' is defined as 'a written statement presented to a court accusing a person of the commission of an offense and includes (a) complaint . . . .' (Ill Rev Stats, c 38, § 102–8 (1967).

" 'Offense' is defined as 'violation of any *penal statute* of this State . . . .' (Ill Rev Stats, c 38, § 102–15 (1967). (Emphasis added.)

"The phrase 'penal statute' is not defined by the Code of Criminal Procedure of 1963; however, that phrase has been defined . . . in Superior Laundry & Linen Supply Co. v. Edmanson-Bock Caterers, Inc., 11 Ill App2d 132, at 134, 136 NE2d 610 (1956), as follows:

"A penal statute is defined to be 'one which imposes a forfeiture or penalty for transgressing its provisions, or for doing a thing prohibited.' (Potter's

Dwarris on Statutes, p 74.) A penalty 'is in the nature of punishment for the non-performance of an act or for the performance of an unlawful act. It involves the idea of punishment, whether enforced by a civil or criminal procedure.' ";

that section 6–303 is a penal statute; that under section 111–3(a) of the Code of Criminal Procedure, the complaint must set forth the nature and elements of the offense charged; and that the complaint failed to allege an essential element of the offense; namely, that the defendant acted either "intentionally," "knowingly," "recklessly," or "negligently."

He further argues that section 4–9 of the Criminal Code of 1961 (Ill Rev Stats 1967, c 38, § 4–9) sets forth specific tests by which the courts of Illinois are to determine whether an offense is one which involves absolute liability; that section 4–9 provides:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4–4 through 4–7 if the offense is a *misdemeanor* which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." (Emphasis added.) ;

and that the first test requires a determination of whether the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500; that a "misdemeanor" is defined as "any offense other than a felony. . . ." (Ill Rev Stats 1967, c 38, § 2–11); that a "felony" is defined as "an offense punishable with death or by imprisonment in the penitentiary" (Ill Rev Stats 1967, c 38, § 2–7); that since a violation of section 6–303 of the Motor Vehicle Act is punishable by imprisonment for not less than seven days nor more than one year and in

325

addition by a fine of not more than $1,000, the offense is a misdemeanor; that under section 4–9 of the Criminal Code, a person may not be guilty of this offense without having as an element thereof, one of the mental states described in sections 4–4 through 4–7 unless the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described, and that such legislative purpose is not clearly indicated in section 6–303.

The Committee Comments with reference to section 4–9 of the Criminal Code, set forth in SHA ch 38, pages 186 through 188, relate the problems attendant upon drafting the sections of the Criminal Code pertaining to mental state requirements and absolute liability. At page 188, the Committee Comments state:

"A very unsatisfactory situation thus existed in Illinois: numerous provisions appeared which were absolute in language; only a few of them had been interpreted as to their mental-state requirements; many of the remainder were felonies, or misdemeanors punishable by incarceration or severe fine; and no adequate rule existed for determining whether a particular provision, not yet interpreted by the courts, was to be regarded as implying a mental-state element or as imposing absolute liability. (The usual methods of interpretation are summarized in Remington, 'Liability Without Fault Criminal Statutes,' 1956 Wis L Rev 625, 629–32.)

"Section 4–9 represents only a partial solution of the problem—a general restrictive rule of interpretation. Another part of the solution is in the rephrasing of the Code provisions which define the specific offenses, to indicate clearly the intended mental-state elements, and the offenses in which mental state, for some cogent policy reason, is not an element.

"The first part of section 4–9 recognizes the type of offense which carries so little culpability that incarceration is not a part of the penalty, and the fine is less than $500. As indicated above, nearly one-third of the former Illinois code provisions which did not express mental state were in this category, as were many of the penal provisions appearing outside of the Code. In view of the difficulty of enforcing such provisions if mental state must be proved in each instance, the assumption seems proper that in these instances the omission of such a requirement is intended to create absolute liability. (See Model Penal Code Sec 2.05, comment at 145 (Tent Draft No. 4, 1955); Sayre, 'Public Welfare Offenses,' 33 Col L Rev 55, 68–72, 78–79 (1933).)

"In addition to permitting a construction requiring absolute liability in offenses punishable by incarceration or by a fine of not more than $500, the second part of section 4–9 expresses the policy that in other offenses not including a mental state in the definition only a clearly indicated legislative intent to create absolute liability should be recognized, and in all other instances, a mental-state requirement should be implied as an application of the general rule that an offense consists of an act accompanied by a culpable mental state, as expressed in Section 4–3. (See Model Penal Code, sec 2.05, comment at 145–6 (Tent Draft No. 4, 1955); Sayre, supra at 68–72, 79–83.)"

Section 6–303 is not a part of the Criminal Code. Consequently, it was not redrafted, along with other sections of the Code, to reflect legislative intent of absolute liability. The section is legislation of a regulatory, police and public welfare nature which involves the violation of laws pertaining to motor vehicles and safety.

Subsection (b) of section 6–303 of the Motor Vehicles Act (Ill Rev Stats 1967, c 95½, par 6–303(b)), provides:

"The Secretary of State upon receiving a report of the conviction of any person under this Section upon a charge of driving a vehicle while the license or permit or privilege of such person was suspended, except as may be allowed by a restricted driving permit issued under this Act, or upon receiving a report of the conviction of any person of any violation indicating said person was operating a motor vehicle during the time when said person's license, permit or privilege was suspended, shall extend the period of such suspension for an additional like period, and if the period of suspension has then expired, the Secretary of State shall be authorized to suspend said person's license or permit or privilege for the same period of time as the suspension which had expired, and if the conviction was upon a charge of driving while a license or permit or privilege was revoked, except as may be allowed by a restricted driving permit issued under this Act, or if the conviction was upon a charge which indicated that a vehicle was operated during the time when the license, permit or privilege of said person was revoked, the Secretary of State shall not issue a license for an additional period of 1 year from the date of conviction if such conviction was obtained after the date such person would have been entitled to apply for a new license."

This subsection clearly manifests a legislative intent to further restrict the erring driver and to protect the safety of the public by the additional restrictions therein imposed. Such provision manifests a legislative purpose to impose absolute liability for the conduct described in subsection 6–303(a).

In People v. Jensen, 24 Ill App2d 302, 164 NE2d 228 (1960), the court pertinently construed this section in these words:

> "The offense under the statute, so far as material, is driving a motor vehicle on a highway at a time when the operator's license is revoked—the particular distance the defendant may have so driven under such circumstances is immaterial so far as commission of the offense is concerned. The particular intent, knowledge, moral turpitude, if any, or purity of motive, if any, of the defendant are also immaterial on the question of guilt under this particular statute: Cf. People v. Player (1941), 377 Ill 417. Price v. People (1884) 109 Ill 109, referred to by the defendant, did not involve the present statute or the present offense."

The Criminal Code was enacted after the Jensen opinion was filed. Generally, a statute should not be construed to effect a change in settled law of the state unless its terms clearly require such construction. People v. Bernette, 30 Ill2d 359, 374, 197 NE2d 436 (1964); Sternberg Dredging Co. v. Estate of Sternberg, 10 Ill2d 328, 333, 334, 140 NE2d 125 (1957).

The terms of section 6–303(a) do not indicate the implication of a mental state requirement. In fact, we believe that the terms of section 6–303(b) negate such requirement.

■■ We conclude that the violation of section 6–303 of the Motor Vehicle Act is an offense which involves absolute liability and that the mental state of the offender is not an essential element of the offense of driving while license is revoked. Accordingly, we adhere to the opinion as originally adopted, and the petition for rehearing is denied.

ABRAHAMSON, P. J. and SEIDENFELD, J., concur.