No. 2--07--0307     Filed:  3-4-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 06--CF--494 |
| DONNELL JOHNSON, | ) ) | Honorable Perry R. Thompson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

The State appeals from an order quashing the arrest of defendant, Donnell Johnson, and suppressing the evidence resulting from that arrest.  It asserts that defendant's driving on a Sunday at about 4:30 p.m. was sufficient for the arresting officer to have reasonable suspicion to stop defendant for violating the terms of his restricted driving permit (RDP), despite the officer's not knowing the RDP's terms.  The State also asks this court to consider under the plain-error doctrine its alternative assertion that the stop of defendant was permissible under the special-needs doctrine. We hold that the time defendant was driving was an insufficient basis for the officer to stop him.  We also hold that any justification of the stop under the special-needs doctrine does not fall within the scope of matters we can consider under the plain-error doctrine.  We therefore affirm the order of the trial court.

On February 12, 2006, Officer James McGreal of the Downers Grove police arrested defendant for aggravated driving with a suspended license (625 ILCS 5/6--303(a), (d) (West 2006)) and aggravated driving with a revoked license (625 ILCS 5/6--303(a), (d) (West 2006)). After his indictment, defendant moved to quash the arrest and suppress the evidence stemming from it. He asserted that McGreal lacked a sufficient basis to make the traffic stop that led to the arrest.

At the hearing on defendant's motion, McGreal testified that, at about 4:30 p.m. on Sunday, February 12, he was checking the licenses of passing vehicles. He was on Finley Road south of Butterfield Road when he ran a registration check on defendant's vehicle, a pickup truck. He followed the truck, and as he did he learned that the owners were a male and a female and that the male had an RDP. He did not learn the RDP's terms. He pulled up alongside the truck and saw that the driver was a male with an appearance consistent with that of the male owner. McGreal then pulled the truck over on the suspicion that the RDP did not permit the driver to drive on Sundays. This suspicion proved correct. The court viewed a police-car camera recording that covered the period about which McGreal testified, but that tape is not part of the record on appeal. Defendant also testified. His testimony was consistent with McGreal's in its essentials, but he further mentioned that his wife was with him in the truck when McGreal pulled him over. After the court heard testimony, the State argued that McGreal had reasonable suspicion to stop defendant because of the day of the week. It also asserted that an officer, when he or she has reason to believe that a vehicle's driver has an RDP, should always be able to stop the vehicle to check whether the driver is within the restrictions. However, it did not argue any legal basis for this assertion.

The court, on February 20, 2007, ruled that McGreal lacked an adequate basis for the traffic stop of defendant. On March 20, 2007, the State filed a notice of appeal and a certificate of

impairment. On appeal, the State argues that the time defendant was driving gave McGreal a sufficient basis to believe that defendant was outside the terms of his RDP. Alternatively, it argues that the stop of a vehicle belonging to a person with an RDP should fall under the special-needs exception to the requirement of individualized suspicion.

A court analyzes the reasonableness of a traffic stop under the principles of Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). People v. Moss, 217 Ill. 2d 511, 526-27 (2005); see also Berkemer v. McCarty, 468 U.S. 420, 439, 82 L. Ed. 2d 317, 334, 104 S. Ct. 3138, 3150 (1984). Thus, consistent with Terry, if a law enforcement officer "has 'knowledge of sufficient articulable facts at the time of the encounter to create a reasonable suspicion that the person in question has committed, or is about to commit, a crime' [citation], the officer may briefly stop and detain the person to make reasonable inquiries." People v. Love, 199 Ill. 2d 269, 275 (2002), quoting People v. Smithers, 83 Ill. 2d 430, 434 (1980). "While the facts supporting the officer's suspicions need not rise to the level of probable cause, they must be based on more than a mere hunch." People v. Cox, 202 Ill. 2d 462, 467 (2002). "[W]e review a trial court's determination of the facts underlying its ruling on a motion to quash arrest under a manifest-weight-of-the-evidence standard, but review de novo its determination of whether, under those facts, the arrest was proper." People v. Kleutgen, 359 Ill. App. 3d 275, 278 (2005). Thus, to the extent that the facts are not in dispute, our review is simply de novo. Kleutgen, 359 Ill. App. 3d at 278.

We hold that McGreal's stop was based on a hunch, not reasonable suspicion. McGreal was likely correct in believing that Sunday afternoons are times when many RDPs prohibit driving, but that insight was not enough to give rise to reasonable suspicion.

Under the Illinois Vehicle Code, the Secretary of State may issue an RDP to allow a person with a revoked license to drive for limited purposes:

> "[T]he court may recommend and the Secretary of State in his discretion \*\*\* issue to [a person with a driver's license revoked for a specified offense] a restricted driving permit granting the privilege of driving a motor vehicle between the petitioner's residence and petitioner's place of employment or within the scope of the petitioner's employment related duties, or to allow transportation for the petitioner or a household member of the petitioner's family for the receipt of necessary medical care or, if the professional evaluation indicates, provide transportation for the petitioner for alcohol remedial or rehabilitative activity, or for the petitioner to attend classes, as a student, in an accredited educational institution[.]" 625 ILCS 5/6--205©) (West 2006).

These limited purposes make it less likely that a person with an RDP will be driving within the scope of an RDP on a Sunday afternoon, but they do not make it improbable. Many people work on Sunday, and they may come off shifts at 4 p.m. They may need emergency medical care anytime. Surely some groups engaged in alcohol rehabilitation meet on Sunday afternoon.

We acknowledge that some combination of factors, including the time the holder of an RDP was driving, might lead to a reasonable suspicion that the driver was outside the terms of his or her permit. For instance, that a driver seemed to be arriving at a sporting event near game time might do so. However, the only factor the State had evidence of was the time. The State suggests that the presence of defendant's wife in the truck was another factor suggesting that defendant was outside the terms of his permit.[1] Because nothing in the record suggests that McGreal noticed that another

---

[1] The State seems to have drawn the inference that, because McGreal drew alongside

person was in the truck until after he initiated the stop, we need not decide whether that was the case. The case for the reasonableness of the stop rests on the time alone, which is not enough.

The time defendant was driving may have reasonably caused a general suspicion that he was violating the terms of his RDP, but that general suspicion is not the particularized suspicion required for a stop. We deem the matter to be akin to a person's mere presence in a high-crime area. "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." Illinois v. Wardlow, 528 U.S. 119, 124, 145 L. Ed. 2d 570, 576, 120 S. Ct. 673, 676 (2000). Sunday may be a high-crime time for RDP holders on the roads, in that many RDPs are likely ineffective at that time, but that, standing alone, is not enough.

The cases cited by the State, People v. McGowan, 69 Ill. 2d 73 (1977), People v. Hoekstra, 371 Ill. App. 3d 720 (2007), People v. Martinez, 206 Ill. App. 3d 813 (1990), and People v. Watson, 24 Ill. App. 3d 237 (1974), reinforce this point. In McGowan, the time of day, the suspects' dress, the lack of open businesses, and the high burglary rate in the area all were involved in generating the suspicion necessary for a stop. McGowan, 69 Ill. 2d at 78. In Hoekstra, factors included an unpopulated area, the general similarity of the involved vehicle to one tied to a burglary, and the hour.

---

defendant's truck to look at the driver, he would have noticed a passenger. However, McGreal never mentioned noticing a passenger. Further, the height of the truck may have made it difficult for McGreal to see whether anyone was in the passenger seat. The car-camera recording may show whether McGreal would have likely seen a passenger, but it is not a part of the record on appeal. We resolve any doubts arising from an incomplete record against the appellant. E.g., People v. Ortiz, 313 Ill. App. 3d 896, 900 (2000).

Hoekstra, 371 Ill. App. 3d at 723-24. In Martinez, factors included the prevalence of auto theft in the area, the hour, and the incongruity between the driver and the car. Martinez, 206 Ill. App. 3d at 822-23. In Watson, the suspects drew suspicion by parking at a closed gas station (after dark) and driving away from it rapidly with lights off. Watson, 24 Ill. App. 3d at 240. None of these cases suggests that a single factor that generates merely general suspicion is enough by itself.

The State also argues that the quantity of evidence required decreases as the need for a stop increases and that the need for a stop was high here because of the high interest in enforcing the RDP scheme. We disagree that the principle cited by the State weighs in its favor. The State can plausibly argue that efficient enforcement of the RDP scheme requires that law enforcement officers be able to stop RDP holders for spot checks. Indeed, that point is at the core of its argument that the special-needs doctrine applies. However, a stop of an RDP holder who is driving competently involves no exigency. If the simple fact that someone might get away with a crime without a stop tended to reduce the quantity of evidence needed, cases in which the quantity of evidence needed was not reduced would be the exception.

The State asks this court to consider, under the plain error doctrine, the possibility that the special-needs doctrine allows suspicionless stops of drivers known to be driving on RDPs. We will not do so. This court has considered pure issues of law, otherwise waived by the State, under the plain-error doctrine. People v. Knop, 199 Ill. App. 3d 944, 949 (1990). However, to be considered as plain error, the error must be clear and obvious. People v. Piatkowski, 225 Ill. 2d 551, 565 & nn. 2-3 (2007); see also United States v. Olano, 507 U.S. 725, 734, 123 L. Ed. 2d 508, 519, 113 S. Ct. 1770, 1777 (1993) (stating the same proposition under federal law). As we discuss, the relevant

precedent turns on subtle balancing tests, such that we cannot say that any error was clear and obvious.

Under the special-needs doctrine, the state can search or seize persons without the normally required degree of suspicion when it can show that two conditions are met. One, a state interest beyond that of normal law enforcement must necessitate the search or seizure. Two, the circumstances must be such that the state's interest would be frustrated if it were required to adhere to the usual suspicion requirements. If the state shows that both conditions exist, the court balances the state's interest against the privacy interests of the persons affected and allows the search or seizure only if the state's interest outweighs the privacy interests. R. Dodson, Ten Years of Randomized Jurisprudence: Amending the Special Needs Doctrine, 51 S.C. L. Rev. 258, 258-59 (2000); see also F. Arcila, Jr., Special Needs and Special Deference: Suspicionless Civil Searches in the Modern Regulatory State, 56 Admin. L. Rev. 1223, 1224-25 (2004).

This balancing test has attracted criticism from commentators for its unpredictability and lack of clear standards. E.g., F. Arcila, Jr., Special Needs and Special Deference: Suspicionless Civil Searches in the Modern Regulatory State, 56 Admin. L. Rev. 1223, 1231 (2004) (asserting that the test is essentially subjective). It is not our place here to take a position in the commentators' battle, but their point about unpredictability is a fair one. The balancing of the state's interests with individual rights is a subtle business. Where both individual rights and an important state interest are at stake, and without binding precedent closely on point, we simply cannot say that the outcome is clear and obvious.

The State cites certain lines of cases as analogous, but we do not deem the lines so closely analogous that their applicability is clear and obvious. First, the State argues that a driver with an RDP is analogous to a probationer or parolee; such persons are often subject to reduced-suspicion

searches. These cases are not directly applicable here, as a common thread throughout them is that reduced-suspicion searches were a condition of probation or parole. United States v. Knights, 534 U.S. 112, 151 L. Ed. 2d 497, 122 S. Ct. 587 (2001), can stand as a representative case. The defendant there agreed to a probation condition requiring him to " '[s]ubmit his . . . person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer.' " Knights, 534 U.S. at 114, 151 L. Ed. 2d at 502, 122 S. Ct. at 589. "The probation condition *** significantly diminished Knights' reasonable expectation of privacy." Knights, 534 U.S. at 119-20, 151 L. Ed. 2d at 505, 122 S. Ct. at 592. It was this and the state's interest in closely supervising probationers that made reasonable a search of the defendant's house on reasonable suspicion alone. Knights, 534 U.S. at 121-22, 151 L. Ed. 2d at 506-07, 122 S. Ct. at 592-93; see also Moss, 217 Ill. 2d at 531 (noting that the breadth of a search condition affects the expectation of privacy of a person on mandatory supervised release). It may be that fourth amendment law would allow the legislature or the Secretary of State to make submission to random compliance checks a condition of an RDP. Absent such a condition, which Illinois lacks, the cases on searches of probationers or parolees are not closely analogous to this one.

The other lines of cases cited by the State are less closely analogous, so we consider them only briefly. Cases such as Michigan Department of State Police v. Sitz, 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (1990), which permit sobriety or other checkpoints, do not allow law-enforcement officers discretion to select the drivers they will stop, so they do not raise concerns about police arbitrariness. See Sitz, 496 U.S. at 454, 110 L. Ed. 2d at 423, 110 S. Ct. at 2487 (distinguishing Delaware v. Prouse, 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979), which

condemned practices allowing arbitrary selection of targets). Random spot checks of RDP holders are potentially arbitrary. Other cases cited by the State involve nonpolice searches of government employees or students. Such cases involve very different combinations of state and private interests from those at issue here, as do cases allowing housing and other inspections. Given the differences, we do not think that those cases produce a clear and obvious answer to the issue here. Given the lack of cases closely on point, we cannot, under a plain-error analysis, find that the stop of defendant was justified under the special-needs doctrine.

For the reasons stated, we affirm the order of the trial court quashing defendant's arrest and suppressing the evidence arising from that arrest.

Affirmed.

HUTCHINSON and O'MALLEY, JJ., concur.