THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MARC
A. CLOSE, Defendant-Appellee.

Third District   No. 3—08—0357

Opinion filed April 1, 2009.

SCHMIDT, J., specially concurring.
McDADE, J., dissenting.

Brian Towne, State's Attorney, of Ottawa (Terry A. Mertel and Judith Z.
Kelly (argued), both of State's Attorneys Appellate Prosecutor's Office, of
counsel), for the People.

Douglas B. Olivero (argued), of Louis E. Olivero & Associates, of Peru, for
appellee.

JUSTICE WRIGHT delivered the opinion of the court:

A grand jury of La Salle County issued a bill of indictment charg-
ing defendant, Marc A. Close, with one count of felony driving while
license revoked. Following a hearing on April 18, 2008, the trial court
granted defendant's motion to quash arrest and suppress evidence.
The State filed a certificate of substantial impairment pursuant to

Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)) and appeals the trial court's ruling.

## FACTS

On August 7, 2007, a grand jury of La Salle County issued a bill of indictment charging defendant with one count of felony driving while license revoked. The indictment alleged that on or about June 24, 2007, defendant knowingly drove a 1987 Chevrolet upon a public highway, Argyle Street, at a time when defendant's driver's license was revoked for a conviction for the offense of driving under the influence of alcohol and the defendant had been previously convicted of the offense of driving while license revoked.

On December 5, 2007, defendant filed a "motion to quash and suppress" alleging in part that defendant's conduct did not give rise to probable cause. Defendant sought the suppression of any statements or physical evidence obtained as a result of defendant's arrest and the dismissal of the charges.

After multiple continuances, the trial court conducted a hearing on the motion to quash and suppress on April 18, 2008. Defense counsel called Thomas Belski to testify. Belski, a sergeant with the La Salle police department, testified that he had been employed with the department for four years. Prior to that, he worked as a deputy with the Bureau County sheriff's department for eight years.

On June 24, 2007, he conducted routine patrol in the city of La Salle. At approximately 7:13 p.m., he performed a registration check on a motor vehicle with license plate 12293P, while he followed the vehicle on a roadway. The registration check revealed that the driving privileges of the registered owner of the vehicle were revoked. From the registration check, he also learned that the registered owner had been issued a restricted driving permit, but he did not know the terms of the permit. Belski explained that he used the computer equipment in his squad car to retrieve a photograph of the registered owner, Marc A. Close. He believed Marc A. Close to be the driver of the vehicle after comparing the photograph to the face of the driver he observed operating the vehicle.

Belski stopped the motor vehicle without witnessing the driver commit any violations of the vehicle code. When asked by defense counsel if he stopped the vehicle because he "had a hunch" that the driver was not complying with the terms of his restricted driving permit, Belski stated, "That's correct."

Upon further questioning, Belski stated that he stopped the vehicle based upon his observations of the driver, his clothing, the day of the week, and the time. He further stated that the stop occurred on

Sunday, and he knew from prior experience that restricted driving permits were issued for work purposes or hardship issues only. After stopping the vehicle, Belski approached the driver and inquired about the driver's driving privileges. Upon learning that the driver's privileges were revoked, Belski arrested the driver.

At that time, the trial court interjected about a recent case on the issue. Defense counsel provided the court with a copy of a case entitled *People v. Johnson,* but failed to offer a citation on the record. Defense counsel then continued his questioning of Belski. Belski indicated that the traffic stop occurred in a residential area of La Salle. Belski explained that he observed the driver wearing a baseball cap, sunglasses, and a tank top.

Defense did not call any other witnesses. The State did not offer any evidence. At the conclusion of the evidence, defense counsel again argued the relevance of the case of *People v. Donnell Johnson,* without reference to the citation. Defense counsel further argued that the officer lacked an adequate basis to stop the vehicle.

The State argued that the special needs doctrine allowed the officer to stop the driver to determine compliance with the restricted driving permit. The State also argued that the doctrine of inevitable discovery also applied. The State explained that if the officer had not stopped the vehicle, the officer could have later determined the terms of the restricted driving permit. Based upon the officer's observations, he could still issue a ticket and warrant for defendant, if deemed appropriate.

At the conclusion of the hearing, the trial court granted the motion to quash and certified the question for review by the appellate court. The trial court indicated that it "would like some instruction [from the appellate court] because I can understand why they [law enforcement] believe they could do that."

On April 30, 2008, the State filed a certificate of substantial impairment pursuant to Supreme Court Rule 604(a)(1). On May 16, 2008, the trial court entered an order granting the certificate of impairment and directing the clerk of the court to prepare a notice of appeal. Pursuant to the order, the clerk of the court filed a notice of appeal on May 16, 2008. Following leave of the court, the State filed an amended notice of appeal on June 13, 2008.

## ANALYSIS

On appeal, the State asserts *People v. Johnson,* 379 Ill. App. 3d 710 (2008), was incorrectly decided, and consequently, this court should not follow the Second District's decision. Alternatively, the State argues that the additional circumstances considered by the of-

ficer in this case are readily distinguishable from those facts relied upon by the court in *Johnson*. In addition, the State suggests the special needs doctrine applies and requires reversal of the trial court's ruling on defendant's motion to suppress.

At issue in this case is the officer's basis for a traffic stop to investigate whether a driver, reasonably suspected to be the registered owner of the vehicle, was driving while his license was revoked. The ultimate question of whether the evidence should be suppressed requires *de novo* review. *People v. Lee*, 214 Ill. 2d 476, 483-84 (2005); *People v. Pitman*, 211 Ill. 2d 502, 512 (2004); *People v. Sorenson*, 196 Ill. 2d 425, 430-31 (2001).

The standards for a lawful investigative traffic stop evolved from case law developed after the United States Supreme Court's landmark decision in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Based on *Terry*, a police officer may temporarily stop and approach a person for the purposes of investigating suspected criminal behavior, even though the officer acts on less information than is necessary to support probable cause to make an arrest. *People v. Moore*, 378 Ill. App. 3d 41, 46 (2007). Hunches are not enough to support a *Terry* stop. *People v. Sparks*, 315 Ill. App. 3d 786, 792 (2000). An officer must have specific knowledge such that the officer is able to articulate sufficient facts present at the time of the encounter to justify the officer's reasonable suspicion that the person in question has committed or is about to commit a crime. *People v. Moore*, 378 Ill. App. 3d at 46; *People v. Chavez*, 327 Ill. App. 3d 18, 32 (2001); *People v. Sparks*, 315 Ill. App. 3d at 792.

It is well established that an officer can lawfully conduct a *Terry* stop of a vehicle after learning or receiving information that the license of the registered owner of the vehicle is revoked or suspended. See *People v. Blankenship*, 353 Ill. App. 3d 322, 325 (2004); *Village of Lake in the Hills v. Lloyd*, 227 Ill. App. 3d 351, 352-53 (1992). The purpose of the stop is to allow the officer to check the status of the operator's privilege to drive. *Village of Lake in the Hills v. Lloyd*, 227 Ill. App. 3d at 353, citing *People v. Barnes*, 152 Ill. App. 3d 1004, 1006 (1987).

In this case, the officer learned from reliable law enforcement records that the registered owner of the vehicle had a revoked driver's license. Additionally, the officer also learned from the same reliable records that the registered owner had been issued a valid restricted driving permit (RDP).

Consequently, we are called upon to determine whether the existence of an RDP demands an added layer of information before an officer develops a sound articulable basis to stop a suspected revoked driver. The issue is whether an officer, knowing the suspected driver

has been issued an RDP, may initiate a traffic stop based solely on the knowledge that the suspected driver's license has been revoked; or whether the officer must delay stopping a suspected revoked driver, known to have received an RDP, until the officer considers additional information that excludes a reasonable possibility that the driver may be operating the automobile within the scope of the restricted permit. The answer can be found in the Illinois Vehicle Code (625 ILCS 5/1—100 *et seq.* (West 2006)) and existing case law.

The case law provides that once a "person's privilege to drive has been revoked the restoration of that privilege is not an automatic matter." *Agans v. Edgar*, 142 Ill. App. 3d 1087, 1089 (1986), citing *People v. Turner*, 64 Ill. 2d 183, 186 (1976). A restricted driving permit does not restore a person's driving privileges but merely allows the person with a revoked driver's license to drive upon a highway "subject to the restrictions provided therein and not otherwise." *People v. Manikas*, 106 Ill. App. 2d 315, 320 (1969).

Due to the exigent circumstances created by a moving vehicle, the investigation of this type of driving offense requires swift decision making on the part of the officer. Presumably to assist in the enforcement of driving restrictions, our legislators have imposed a requirement on all drivers to carry their valid license or permit at all times when driving. 625 ILCS 5/6—112 (West 2006). This is not a meaningless requirement. It is a legislatively created tool available to law enforcement to remove drivers who are unlawfully operating their vehicles from the roadway without delay.

We next examine the language selected by our lawmakers to define the elements of the offense of driving while license revoked. The relevant provisions of the Illinois Vehicle Code provide as follows:

"§6—303. Driving while driver's license, permit or privilege to operate a motor vehicle is suspended or revoked.

(a) Except as otherwise provided in subsection (a—5), any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit or privilege to do so *** is revoked or suspended as provided by this Code or the law of another state, *except as may be specifically allowed by a *** restricted driving permit issued pursuant to this Code* or under the law of another state, shall be guilty of a Class A misdemeanor.

\* \* \*

(d) Any person convicted of a second violation of this Section shall be guilty of a Class 4 felony ***, if the revocation or suspension was for a violation of Section 11—401 or 11—501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, or a statutory summary suspension under Section 11—

501.1 of this Code." (Emphasis added.) 625 ILCS 5/6—303(a), (d) (West Supp. 2007).

The language of the statute set forth above demonstrates the issuance of RDPs creates a statutory defense for revoked drivers who are not fully restored as licensed drivers, but have received an RDP. In other words, the exception contained in the provisions of sections 6—303(a) and (d) (625 ILCS 5/6—303(a), (d) (West Supp. 2007)) does not create an additional element of the offense for the State to prove. Instead, the exception for specially permitted drivers allows a revoked driver to avoid a conviction by demonstrating the driver was "specifically allowed" by the permit to operate the vehicle at that point in time, even though his or her driving status remained revoked.

Thus, we agree that an officer is not required to determine or verify the scope of the restricted driving permit *before* performing a traffic stop when a reasonable articulable basis exists to believe the license of the person behind the wheel is revoked. We conclude the mere existence of an RDP does not extinguish an officer's reasonable and articulable basis to believe the officer has witnessed a revoked driver traveling on a highway of this state, in violation of the provisions of the Vehicle Code. However, if the visual inspection of the permit by the officer following a traffic stop does not support the officer's suspicion that the driver is unlawfully operating a motor vehicle, the inspection itself defeats probable cause to continue the investigation of the driver's license status or to make an arrest.

Here, the officer visually confirmed that the facial characteristics of the person whom he observed driving the vehicle matched a photograph of the registered owner. The officer also learned the license of the registered owner was revoked. At this point, based on existing case law, we conclude that this officer, presented with the facts of this case, had a reasonable, articulable basis to believe that defendant was operating a motor vehicle upon a highway of this state at a time when his privilege to do so was revoked in violation of section 6—303(a) of the Illinois Vehicle Code. 625 ILCS 5/6—303(a) (West Supp. 2007). We hold that this officer lawfully initiated this investigatory stop after learning of the registered owner's revoked driving privileges standing alone, regardless of the issuance of an RDP.

For purposes of this appeal, defendant does not suggest he was lawfully operating his vehicle within the terms of his restricted permit at the time of the stop. Instead, he simply challenges the basis for the initial stop and the evidence gathered from that stop.

Next, we address whether the case of *People v. Johnson*, 379 Ill. App. 3d 710 (2008), controls the outcome in this case. In *Johnson*, the officer testified that on Sunday, February 12, 2006, at 4:30 p.m., he

conducted a registration check of a motor vehicle and learned that the male, registered owner of the vehicle possessed a restricted driving permit. After observing "the driver was a male with an appearance consistent with that of the male owner," the officer initiated a traffic stop on the vehicle. *People v. Johnson*, 379 Ill. App. 3d at 711.

The appellate court upheld the trial court's decision quashing the arrest and suppressing the evidence in *Johnson*. The appellate court ruled that the traffic stop was based on "a hunch, not reasonable suspicion," in part, because the officer relied on the time of day alone to deduce the driver might not be operating his vehicle within the conditions of the permit. *People v. Johnson*, 379 Ill. App. 3d at 712-13. The court went on to acknowledge that under other circumstances, not present in that case, "some combination of factors, including the time the holder of an RDP was driving, might lead to a reasonable suspicion that the driver was outside the terms of his or her permit." *People v. Johnson*, 379 Ill. App. 3d at 713.

Unlike the court in *Johnson*, we deliberately reject the view that a combination of factors in this case provided the officer with an articulable suspicion to believe the driver was not complying with his permit based on the time, location, and driver's attire. Such an approach invites abuse. Instead, we decline to follow the ruling in *People v. Johnson*, 379 Ill. App. 3d 710 (2008), based on existing case law discussed above and the provisions of the Illinois Vehicle Code.

While the trial judge was required to follow *Johnson* in the absence of a contrary view from this court, we now expressly decline to follow *Johnson*. Therefore, we hold that this officer had a reasonable articulable basis at the time of this encounter to support a brief investigatory traffic stop to identify the driver, and after confirming the driver was in fact the registered owner, conduct an inspection or investigate the scope of the driver's RDP. Accordingly, the order granting the motion to quash and suppress is reversed, and the case is remanded for further proceedings consistent with this opinion.

In light of our conclusion that the officer possessed reasonable articulable suspicion to justify this traffic stop, it becomes unnecessary to address the State's other argument regarding the special needs doctrine.

## CONCLUSION

The judgment of the circuit court of La Salle County is reversed and remanded for further proceedings.

Reversed and remanded.

JUSTICE SCHMIDT, specially concurring:

I concur with the holding above that the officer's knowledge of the registered owner's revoked driving privileges (RDP) supported a *Terry* stop. I write separately to point out that in my opinion, the *Johnson* case, upon which defendant and the trial court relied, was wrongly decided.

The *Johnson* court acknowledged that " '[w]hile the facts supporting the officer's suspicions need not rise to the level of probable cause, they must be based on more than a mere hunch.' " *People v. Johnson*, 379 Ill. App. 3d 710, 712, 885 N.E.2d 358, 360 (2008), quoting *People v. Cox*, 202 Ill. 2d 462, 467 (2002).

It seems obvious that the case turned upon whether the officer's conclusion that the RDP was not valid on Sunday afternoon was simply a hunch or a reasonable, articulable suspicion.

New Webster's Dictionary defines "hunch" as "an intuition or presentiment." New Webster's Dictionary & Thesaurus 188 (1991). The American Heritage College Dictionary defines "hunch" as "an intuitive feeling or premonition." American Heritage College Dictionary 663 (3d ed. 1993).

The *Johnson* court stated "McGreall *was likely correct* in believing that Sunday afternoons are times when many RDPs prohibit driving, but that insight was not enough to give rise to reasonable suspicion." (Emphasis added.) *Johnson*, 379 Ill. App. 3d at 712, 885 N.E.2d at 360.

One needs to think about what the *Johnson* court said. Three appellate judges acknowledged that the officer "was likely correct" and yet, nonetheless, they labeled his suspicion as a mere hunch. In *Johnson*, the officer knew that the driver was revoked, had an RDP, and was driving on a Sunday afternoon. Apparently, the *Johnson* court wanted him to know that his RDP was not valid on Sunday afternoon. If the officer had proof positive that defendant's RDP was not valid on this Sunday afternoon, he would have had enough to convict beyond a reasonable doubt. That is not the type of evidence that is required for a *Terry* stop. The appellate court in *Johnson* must have agreed that the officer's *articulated suspicion* was *reasonable*, otherwise, how could it have noted that the officer "was likely correct"? *Johnson*, 379 Ill. App. 3d at 712, 885 N.E.2d at 360. If, in fact, the officer had nothing more than a hunch, how could three appellate judges unanimously agree that he was likely correct? The *Johnson* court described a reasonable, articulable suspicion and then labeled it as a mere hunch.

In my opinion, the *Johnson* court, like many Illinois courts, has eroded the concept of reasonable, articulable suspicion. Since the officer might have been wrong and the defendant's RDP might have been valid, courts simply say that there was no reasonable, articulable

suspicion of wrongdoing. Since the issue before us is a fourth amendment issue, the United States Supreme Court is the guiding light for our analysis.

The long-prevailing standard of probable cause protects citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime, while giving fair leeway for enforcing the law in the community's protection. *Maryland v. Pringle*, 540 U.S. 366, 157 L. Ed. 2d 769, 124 S. Ct. 795 (2003). Probable cause exists when there is fair probability that contraband or evidence of a crime will be found in a particular case. *United States v. Grubbs*, 547 U.S. 90, 164 L. Ed. 2d 195, 126 S. Ct. 1494 (2006).

We have lost sight of the fact that reasonable, articulable suspicion is even a lower threshold than is probable cause. Reasonable suspicion entails some minimal level of objective justification for making a stop: something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Reasonable, articulable suspicion is *considerably less than proof of wrongdoing by a preponderance of the evidence. United States v. Sokolow*, 490 U.S. 1, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989). We know that a preponderance of the evidence is that something is more likely true than not. Therefore, to form reasonable, articulable suspicion, the officer does not have to establish that it is more likely true than not that the subject of the stop is guilty of criminal wrongdoing. The Supreme Court has acknowledged that there will be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity is afoot. *Reid v. Georgia*, 448 U.S. 438, 65 L. Ed. 2d 890, 100 S. Ct. 2752 (1980); *United States v. Sokolow*, 490 U.S. 1, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989).

Based on the facts set forth above, the officer clearly had a reasonable, articulable suspicion that the driver was operating in violation of his RDP. It would be fair to say that most, but not all, people driving about on Sunday afternoons are not going to or from work. This commonsense observation is undoubtedly what led the *Johnson* court to conclude that the arresting officer was likely correct. Even had he been wrong and had the defendant actually been going to or coming from work, or going to or coming from the hospital, the brief investigatory stop was supported by reasonable, articulable suspicion and, therefore, constitutionally permissible. See *United States v. Sokolow*, 490 U.S. 1, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989). Again, the concept of reasonable, articulable suspicion presupposes that the detained person's conduct might very well be innocent. I believe the trial court, as did the *Johnson* court, held the State to a higher burden than that

imposed by the law and, therefore, concur in the judgment to reverse and remand for further proceedings.

JUSTICE McDADE, dissenting:

I dissent from the decision of the majority to reverse the trial court's order granting defendant's motion to quash arrest and suppress evidence.

The majority holds that "an officer is not required to determine or verify the scope of the restricted driving permit before performing a traffic stop when a reasonable articulable basis exists to believe the license of the person behind the wheel is revoked." (Emphasis omitted.) 389 Ill. App. 3d at 233. Stated another way, once the officer reasonably determines that the person behind the wheel has a revoked driver's license, that officer can execute a traffic stop to investigate whether the driver was operating the vehicle outside the terms of his/her RDP. Thus, the terms or scope of the RDP have no bearing on the question of whether the officer had a sufficient basis to execute the traffic stop. Instead, the majority finds that an RDP merely creates a statutory defense which allows a revoked driver to avoid a conviction by demonstrating to the officer that he/she is "specifically allowed" by the permit to operate the vehicle at the time of the seizure. 389 Ill. App. 3d at 233.

I believe the majority's reasoning is flawed in that it ignores the fact that an officer is only allowed to stop and detain an individual if the officer has "knowledge of sufficient articulable facts at the time of the encounter to create a reasonable suspicion that the person in question *has committed, or is about to commit, a crime.*" (Emphasis added). *People v. Love*, 199 Ill. 2d 269, 275, 769 N.E.2d 10, 15 (2002), quoting *People v. Smithers*, 83 Ill. 2d 430, 434 (1980). Driving on a revoked license is not a crime if the individual is driving within the scope of his/her RDP. Thus, in order to effectuate a valid traffic stop, I believe an officer must have a reasonable articulable suspicion that the driver is operating the vehicle outside the terms of his/her RDP. As in the case of *People v. Johnson*, 379 Ill. App. 3d 710, 885 N.E.2d 358 (2008), the officer's stop in the present case was based solely on a hunch, not reasonable suspicion. In the case where a driver of a vehicle has an RDP, mere knowledge that the driver has a revoked driver's license is insufficient to support a *Terry* stop. *Johnson*, 379 Ill. App. 3d at 712, 885 N.E.2d at 360. While the majority declines to adopt the reasoning set forth in *Johnson*, I believe *Johnson* was properly decided.

Accordingly, I would affirm the judgment of the trial court granting defendant's motion to quash arrest and suppress evidence.