FIFTH DIVISION
December 26, 2008

1-08-0592

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 6641 |
| | ) | |
| SALVADOR RUANO, | ) | Honorable |
| | ) | Thomas J. Hennelly, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____JUSTICE TOOMIN delivered the opinion of the court:

After a hearing on defendant, Salvador Ruano's motion to quash arrest and suppress evidence, the trial court granted relief and suppressed 96 kilograms of cocaine recovered during a traffic stop. The State now appeals, contending the court erred in granting the motion where it found probable cause to search the vehicle existed, but reasonable suspicion to make the initial traffic stop was lacking. For the reasons that follow, we affirm the order of the circuit court.

BACKGROUND

Defendant was charged with possession of a controlled substance with intent to deliver after 96 kilograms of cocaine were recovered from a search of his tractor trailer. After arraignment, defendant moved to quash his arrest and suppress the evidence. At the conclusion of the hearing, the court granted the motion upon a finding that there was no probable cause or reasonable suspicion to support the traffic stop. In turn, the State filed a certificate of impairment, pursuant to Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)), as well as a notice of appeal. The sole issue before us is whether the court's decision regarding the initial stop

was in conformance with the law and the evidence.

## The Hearing on the Motion to Suppress

The hearing took place over several court dates and included the testimony of defendant and three members of law enforcement. In light of the narrow scope of our review, we will reference only that testimony relevant to our decision.

### Salvador Ruano

Defendant, Salvador Ruano, testified that he was a self-employed over-the-road truck driver with 12 to 13 years of experience, who resided in Moreno Valley, California. He was the owner-operator of his truck, which he purchased in 2000. In February of 2006, defendant had a valid commercial driver's license, the registration for his truck was in good standing, and he had insurance. If not, he would not have been able to get work.

Defendant learned from a man named Martin about a load of food products to be delivered from Los Angeles, California, to Chicago about five days prior to his arrest. On direct examination, defendant testified that he had known Martin for about one year from around the port. He did not know his last name or that, prior to this occasion, he hired drivers. Pursuant to Martin's direction, defendant located the trailer, finding it was already loaded. Payment for this delivery was to be made by a woman in Utah. On the night of February 26, defendant left California with a colleague, David Ulola, whom he had hired to share the driving on the trip. Defendant brought his logbook to document stops as well as his and Ulola's driving times. Every five hours he and Ulola would switch driving; on those occasions, they would stop, inspect the functioning of the truck and its accessories, and check the load or the seal on the trailer.

1-08-0592

Defendant's itinerary provided for two stops in Illinois: Rockford and Danville. He was to load in one place and unload in the other. Rockford was to be the first stop. The entirety of their trip in the State of Illinois was on Interstate 55. Defendant and Ulola arrived in Chicago around 10 p.m. on February 28, leaving Interstate 55 at California Avenue. They stopped at a gas station to purchase a map and food. It was his custom to buy maps of the cities where he had deliveries. During the 30 to 40 minutes they spent at the gas station, Ulola was in and out of the truck, but did not purchase anything. Defendant then followed the route indicated on the map in order to return to Interstate 55 northbound toward Interstate 90/94, which required him to go several blocks down adjacent streets and reenter Interstate 55 at another point. Ten to fifteen minutes later, he was stopped by the police.

While one of the registration documents given to the officer was expired, another document in the set explained that the registration was current and paid for 2006. Specifically, he had a delay-in-enforcement letter with him when he was pulled over. None of the documents defendant tendered to the officer were returned to him.

### Inspector Michael Knaus[1]

Inspector Michael Knaus was a member of a Cook County sheriff's police task force working with the Illinois State Police High Intensity Drug Trafficking Area (HIDTA) Narcotic and Currency Interdiction Unit. The group focused on locating and interdicting narcotics, currency, and explosives being transported on interstates. As a part of this assignment he

[1]Defendant notes the inconsistency of the spelling of this witness's name. The complaint in the record signed by him and printed his name as "Knaus." Thus, we will utilize that spelling.

-3-

underwent interdiction training to learn "the commercial vehicle industry, the standards, logbook nomenclature, the truck tractors and the trailers, logbooks, and things of that nature." Specifically, he learned to look for owner-operators and high Department of Transportation (DOT) numbers. The DOT numbers are assigned to each company and are not reused or recycled; numbers over 1 million are indicative of a "relatively new company in business." They also look for "source state companies, companies that are on the border with Mexico."

On February 28, 2006, Knaus was located in a surveillance position on 35th Street southwest of the Speedway gas station at 3401 South California Avenue in Chicago at the junction with Interstate 55. At that time, his team was actively surveilling another truck in the parking lot. While Knaus was alone in his vehicle, other task force members were in the area and in communication with each other.

Knaus testified that he first noticed defendant's vehicle at the stop light at 35th and California because "it was out of California, had two people in the front seat, a driver and a passenger, had a high DOT number, had some religious items hanging down from the visor area." His suspicions were also aroused because the trailer was refrigerated. According to Knaus, the presence of religious items can be indicative of persons transporting contraband because "they tend to put a lot of religious items in their vehicle thinking that's going to protect them from law enforcement." Police stickers – indicating support of law enforcement – and a "Tweetie [*sic*] Bird cartoon" sticker were also seen on the tractor. Cartoons are often used by narcotics traffickers to make tractors more identifiable for anyone trying to locate a particular truck at a truck stop. Knaus also noticed the presence of a lock and seal on the trailer.

Knaus shared his observations with his colleagues and they kept defendant's truck in sight as it entered the truck parking lot adjacent to the gas station. They decided to include defendant's truck in their surveillance. During the course of the surveillance, Special Agent (SA) Tim Gainer checked the registration of defendant's truck and related that it was expired. Knaus could not say when SA Gainer would have done so, but it was several hours before defendant pulled out of the lot. Knaus conceded he was not sure who checked the registration, but knew someone did either using their laptop computers or through radio dispatch. Eventually, the registrations for the tractor as well as the trailer were checked. Defendant's truck was parked from about 6:40 p.m. until after 10 p.m. that night.

Knaus's report indicated that SA Gainer had a visual on the truck's cab and saw the male passenger exit at about 9:40 p.m. Initially, the passenger appeared suspicious simply because Knaus did not know he was a co-driver. SA Gainer observed the passenger walking through the parking lot, apparently talking on his cellular phone, and looking into parked vehicles. The passenger then returned to the truck, which remained in place until about 11 p.m. when the truck pulled out of the lot with Knaus and other surveillance team members following it. At this point, the task force members did not have any additional information, other than their reported observations, to indicate defendant was involved in criminal activity. According to Knaus, defendant drove his truck onto southbound Interstate 55, exited at Kedzie, traveled south on Kedzie a short distance and reentered northbound Interstate 55. This was the only way to get back onto northbound Interstate 55 at that point. The pursuit ended minutes later when Knaus stopped defendant near the Division Street exit on Interstate 90/94, a distance of approximately

1-08-0592

8½ miles.

As he followed defendant, Knaus maintained radio contact with his supervisor, asking for guidance on appropriate measures. Nevertheless, Knaus decided on his own to stop the truck as it got onto Interstate 90/94 westbound. Up to that point, defendant had not violated any traffic laws, but appeared to have an expired registration. Based on Knaus's experience and knowledge of interdiction in commercial trucking, the supervisors yielded to Knaus's decision when to stop defendant.

The report Knaus prepared reflected that he had inquired about the truck's registration and found it was expired. Yet, prior drafts of this same report made no mention of a registration check by Knaus or any of his fellow task force members. Nor did he at any time make any effort to contact authorities in California to secure a certified copy of the registration or the like because he was instructed by an assistant State's Attorney not to do so. Based on a supervisor's suggestion, Knaus's final report also changed the description of the stop of defendant's vehicle from a "traffic stop" to an "investigative stop." He had drafts of his report because an assistant State's Attorney requested a copy before it was finalized.

<u>Special Agent Gutierrez</u>

Special Agent Gutierrez recalled hearing discussions about defendant's truck over the radios about 20 minutes prior to its departure from the lot. Though he did not follow the same route as defendant and Knaus, Gutierrez monitored the radio communications and heard Sergeant Weber give Knaus an order to stop defendant's vehicle. Gutierrez arrived at the scene of the stop within seconds of it taking place.

1-08-0592

At the outset, the trial court noted its misgivings concerning defendant's testimony regarding his route and purpose in arriving in Chicago, even calling parts "absurd." Commencing with the search of defendant's truck, the judge reasoned that everything that occurred subsequent to the stop was permissible and comported with the strictures of the fourth amendment. The issue presented was whether the basis for stopping defendant's vehicle was justified. Integral to this analysis was whether it was a traffic stop or an investigative stop.

First, the trial court noted the various factors relied upon by Knaus as a basis for the stop. In the court's view, the DOT number on the truck, in light of the approximately six years of ownership, was not a significant observation. Second, the Tweety Bird sticker, standing alone, was not weighty, but would be considered against all of the other factors. The presence of police stickers and religious artifacts was mentioned, but not analyzed. The presence of a seal was not significant standing alone, though its condition was significant. However, in the court's view, that was not something Knaus could observe in the dark while the truck was in motion and was not actually seen until after the truck was stopped. The lock, on the other hand, would be visible. Consequently, the presence of the seal was not significant. Similarly, having a co-driver, even one who was walking around the lot, talking on his cellular phone, and looking into cars, was not significant on its own and was subject to an innocent explanation. The relevant factors were summarized as follows:

"So I am left with the investigative stop with these things: Tweety Bird, police stickers, religious artifacts, and the fact that the assistant or a co-driver was

-7-

talking on cell phones and looking into trailers [*sic*] while he was parked at 35th and California."

The court's analysis embraced *United States v. Arvizu*, 534 U.S. 266, 151 L. Ed. 2d 740, 122 S. Ct. 744 (2002). While the facts at bar resembled *Arvizu*, the trial court observed that *Arvizu* took place in a very different part of the country and did not involve interstate commerce. Nonetheless, the court addressed each of the factors discussed by the United States Supreme Court in *Arvizu*, ultimately finding that the testimony of Knaus was "not on all fours" with that holding. Clearly, the factors present in *Arvizu* were "certainly much more significant" than those testified to by Knaus. Moreover, the court concluded that the factors observed and related by Knaus did not give him "reason to believe there was criminal activity afoot thereby justifying a further investigation into this. So I don't think he was justified in stopping the trailer under that theory." Accordingly, the trial court rejected these bases for making an investigative stop of defendant's truck.

The trial judge's analysis then turned to whether there was an alternative basis to uphold the stop; whether there was a valid traffic stop of defendant's truck. On direct examination, Knaus testified that Special Agent Gainer ran a check of the registration on the truck and Gainer radioed back that it was expired. Yet, Knaus's final report indicated he ran the check of the registration himself. Then on redirect, the court noted Knaus's hedging where he testified that "one of us" inquired about the truck's plates. The trial judge then stated, "Those answers give the court pause in lieu [*sic*] of the fact there [are] some contradictions in the report and in the testimony as to actually who ran this."

Significantly, the documents received from the State of California and tendered by the defense revealed the registration was valid on February 28, 2006. This was significant to the court because it did not seem that an inquiry into the license would have come back expired in light of this information. The trial court also found "disconcerting" the fact that no ticket was issued, "Even if it was done in error and they later found out that it was legitimate, I would think that should have been *** in the report and it was not." The trial court also expressed disbelief at Knaus's testimony that he did not seek or obtain a certified copy of defendant's registration because an assistant State's Attorney told him it was not needed. Given all of "his experience and training and everything else," Knaus could and should have sought this evidence on his own.

With respect to the officer's reports, the trial court was likewise concerned with the absence of any reference to defendant's truck being stopped for a registration violation, the various changes over time, as well as the addition indicating that Knaus inquired about the truck's registration and learned it was expired.

While the court believed the police work done was good and their hunches were accurate, it rejected the assertion that the stop was proper under the fourth amendment. The police simply lacked a lawful, reasonable basis to warrant the stop. Further supporting this conclusion was the conflict surrounding whether Knaus was directed to stop the truck or did it on his own. Rather, the trial court believed the stop was ordered by a supervisor "because I believe they thought they were going to lose whatever contraband was in this trailer and was now leaving the jurisdiction. I think it was done without probable cause."

ANALYSIS

Rulings on motions to suppress are reviewed pursuant to the two-part standard articulated in *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996), where findings of historical fact are viewed for clear error with reviewing courts affording due weight to any inferences drawn therefrom by the trial court and the ultimate legal ruling concerning suppression is reviewed *de novo*. Factual findings are given great deference and are not subject to reversal unless they are contrary to the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542, 857 N.E.2d 187, 195 (2006). "This deferential standard of review is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony." *People v. Jones*, 215 Ill. 2d 261, 268, 830 N.E.2d 541, 548 (2005). Such findings are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *People v. Beverly*, 364 Ill. App. 3d 361, 368, 845 N.E.2d 962, 969 (2006). Reviewing courts, however, remain free to assess the facts in concert with the issues to draw conclusions when determining appropriate relief. *Luedemann*, 222 Ill. 2d at 542, 857 N.E.2d at 195.

The fourth amendment to the United States Constitution (U.S. Const., amend IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, §6) protect individuals from unreasonable searches and seizures. See *People v. Rosenberg*, 213 Ill. 2d 69, 77, 820 N.E.2d 440, 446 (2004). The constitutional requirement of reasonableness applies equally to traffic stops as in other type of seizure. *Jones*, 215 Ill. 2d at 270, 830 N.E.2d at 549.

While searches and seizures generally require a warrant issued upon probable cause, law

enforcement officers may conduct warrantless investigatory vehicle stops where the officer "can point to specific, articulable facts that, when combined with rational inferences derived therefrom, create reasonable suspicion that the person seized has committed or is about to commit a crime." *Beverly*, 364 Ill. App. 3d at 368, 845 N.E.2d at 969, citing *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1968); see also 725 ILCS 5/107-14 (West 2004) ("A peace officer *** may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense ***").

Precedent dictates that the facts forming the basis of reasonable suspicion need not rise to the level of probable cause and do not require an officer to actually witness a violation. *People v. Richardson*, 376 Ill. App. 3d 612, 625, 876 N.E.2d 303, 314 (2007). Likewise, it is permissible for police to perform a computer check of a vehicle's license plate or registration without having observed any traffic infraction. *People v. Brand*, 71 Ill. App. 3d 698, 699, 390 N.E.2d 65, 67 (1979). Yet, a "*Terry* investigative detention cannot be justified, however, on the basis of 'unparticularized suspicion' or on a 'hunch.' " *People v. Gherna*, 203 Ill. 2d 165, 181, 784 N.E.2d 799, 808-09 (2003), quoting *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883. As the court in *Beverly* explained:

> "We objectively consider whether a stop was proper, looking at the facts available to the officer at the time of the seizure to determine whether his or her actions were appropriate. *Luedemann*, 357 Ill. App. 3d at 420. The situation encountered by the officer must be so far from the ordinary that any competent officer would be expected

1-08-0592

to act quickly." *Beverly*, 364 Ill. App. 3d at 369, 845 N.E.2d at 969.

Police officers who observe the commission of a traffic violation are justified in initiating a brief detention of the driver to investigate. *People v. Sorenson*, 196 Ill. 2d 425, 433, 752 N.E.2d 1078, 1084 (2001); see also *Whren v. United States*, 517 U.S. 806, 810, 135 L. Ed. 2d 89, 95, 116 S. Ct. 1769, 1772 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). The analysis is properly conducted from the perspective of a reasonable officer at that moment in time and not in hindsight. *People v. Frazier*, 248 Ill. App. 3d 6, 14, 617 N.E.2d 826, 833 (1993).

Because traffic stops more closely resemble the investigatory stops addressed in *Terry* (*Knowles v. Iowa*, 525 U.S. 113, 117, 142 L. Ed. 2d 492, 498, 119 S. Ct. 484, 488 (1998)), they are generally analyzed in light of the principles of reasonableness set out in *Terry*. See *Jones*, 215 Ill. 2d at 270, 830 N.E.2d at 549; see also *People v. Johnson*, 379 Ill. App. 3d 710, 712, 885 N.E.2d 358, 360 (2008). "To satisfy the reasonableness requirement of the fourth amendment, a police officer conducting a search or seizure under an exception to the warrant requirement need not always be correct but must always be reasonable." *People v. Cole*, 369 Ill. App. 3d 960, 967, 874 N.E.2d 81, 88 (2007). Those officers may draw upon their skills, training, and experience to draw inferences or make deductions based upon their observations that others might not be able to make. *United States v. Arvizu*, 534 U.S. 266, 273, 151 L. Ed. 2d 740, 749-50, 122 S. Ct. 744, 750-51 (2002).

*Terry* and its progeny require that "the police officer's action in initiating the stop must be justified." *People v. Matthews*, 357 Ill. App. 3d 1062, 1067, 831 N.E.2d 627, 631 (2005); see

-12-

1-08-0592

also *People v. Crosby*, Nos. 100681, 102584 cons., slip op. at 20 (September 18, 2008) ("Nonetheless, this court and many other courts have analyzed traffic stops under *Terry* principles, regardless of whether the initial stop was supported by probable cause or reasonable suspicion"). Moreover, the validity of a given stop is a distinct question from that of the validity of any subsequent search. *Sorenson*, 196 Ill. 2d at 433, 752 N.E.2d at 1084.

Here, the stop of defendant's vehicle was based upon the status of its registration as well as other questionable factors related by Inspector Knaus. These additional factors included, *inter alia*, the truck's state of origin, that it was owner-operated, that it was adorned with certain stickers, that it pulled a refrigerated trailer complete with a padlock and seal, and that the cab was decorated with religious artifacts and talismans. According to the State, all of these factors observed by the officers, taken in combination, were sufficient to warrant an investigatory stop of defendant's truck. The defense counters that each of the factors articulated by the officers was subject to an innocent explanation.

In our view, the aggregate weight of these factors did not give rise to a reasonable suspicion, let alone probable cause. *Beverly*, 364 Ill. App. 3d at 368, 845 N.E.2d at 969. It is clear from the record that the trial court, while far from ignoring these factors, relied more heavily on the issue of the registration. Furthermore, we agree with defendant and the trial court that many of the factors cited as supporting a reasonable suspicion were subject to innocent explanations and even when considered together did not support a reasonable suspicion. Having reviewed the record and the trial court's findings regarding the factors, other than the registration issue, we find they were not manifestly erroneous. *Luedemann*, 222 Ill. 2d at 542, 857 N.E.2d at

-13-

1-08-0592

195.

Turning then to the issue of the registration, if the registration was expired or otherwise invalid, probable cause for an investigatory stop of defendant's truck would indeed exist. *Brand*, 71 Ill. App. 3d at 699, 390 N.E.2d at 67. Given the testimony of Knaus that defendant's truck was surveilled in the parking lot for over three hours, a reasonable inference could be drawn that the initially observed indicators were not sufficient in the minds of Knaus and his colleagues to warrant an investigatory stop or to obtain a warrant. Rather, the lone potentially sufficient basis for a stop was the registration. However, the testimony on this point was marginal, and it is clear the trial court entertained significant doubts regarding Knaus's efforts to determine the status of the registration.

Since our concern centers on the basis for conducting the stop, it is the substance and credibility of the testimony of Knaus that is relevant to our review. While the trial court did not deem the testimony of Knaus completely unworthy of credit, it is clear the court discounted much of the testimony regarding the registration check. We defer, as we must, to the determinations of the trial court on these matters as it occupies a "superior position" to observe the evidence presented. *Jones*, 215 Ill. 2d at 268, 830 N.E.2d at 548. Our review indicates that the trial court did, in fact, consider all of the credible evidence presented in arriving at a reasoned and reasonable decision. See *People v. Bartimo*, 345 Ill. App. 3d 1100, 1109, 803 N.E.2d 596, 605 (2004) (trial courts are "presumed to consider only proper evidence").

Considering the inordinate length of police surveillance, it is reasonable to expect that a definitive answer about the registration status could have been obtained through law enforcement

-14-

1-08-0592

channels. *Cf. Beverly*, 364 Ill. App. 3d at 369, 845 N.E.2d at 969 ("The situation encountered by the officer must be so far from the ordinary that any competent officer would be expected to act quickly"). As such, we reject the State's argument that the only way to dispel any concerns about defendant's registration was to stop him and, in turn, for defendant to present his "delay in enforcement" letter.

Furthermore, it is significant that the only substantive testimony regarding matters surrounding the initial stop came from Knaus, despite testimony that he was just one member of a team of officers and agents involved in the larger surveillance effort. Even were we to apply a less deferential standard to the trial court's findings, the same result would obtain. See *Jones*, 215 Ill. 2d at 268, 830 N.E.2d at 548.

The record in this case reveals a professionally litigated motion to suppress. The ruling of the trial court was equally considered and thoughtful. We concur in the court's holding that the stop of defendant's truck was based on neither reasonable suspicion nor probable cause. Rather, the stop was based upon a hunch, albeit a good one. As the trial court observed, the stop was made on instinct. While the societal benefit inuring from the seizure of a substantial quantity of narcotics cannot be understated, the manner in which the removal came to pass was not permissible under the fourth amendment. See *Gherna*, 203 Ill. 2d at 181, 784 N.E.2d at 808-09. In this sense we concur in the observation of the trial court in applauding the work of the prosecutor:

"I buy your tenacity and aggressiveness in this case; but unfortunately for you, there was nothing else for you to do. You can only play the hand that you are dealt ***

1-08-0592

and unfortunately they did not bring you any cards in this case."

The totality of facts and circumstances observed by Inspector Knaus and his colleagues was insufficient to support a reasonable suspicion or probable cause that defendant committed or was committing a crime. *Beverly*, 364 Ill. App. 3d at 368, 845 N.E.2d at 969. Therefore, we find the trial court's conclusions on the historical facts of this case were not manifestly erroneous. *Luedemann*, 222 Ill. 2d at 542, 857 N.E.2d at 195. Furthermore, the legal conclusion that the stop of defendant's vehicle was not in accordance with the fourth amendment finds ample support in the record. *Ornelas*, 517 U.S. at 699, 134 L. Ed. 2d at 920, 116 S. Ct. at 1663 Consequently, we affirm the trial court's order quashing defendant's arrest and suppressing the evidence obtained thereby.

CONCLUSION

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.