THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH HARPER, Defendant-Appellant.

Second District   No. 2—91—0354

Opinion filed November 5, 1992.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, and David S. Morris, of Chicago, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Lisa A. Hoffman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

After a bench trial on stipulated facts, the circuit court convicted defendant of possession of less than 15 grams of a controlled substance (Ill. Rev. Stat. 1991, ch. 56½, par. 1402(b)). The court sentenced defendant to 24 months' probation. Defendant appeals, contending that the court erred in denying his motion to ˆquash arrest and suppress evidence. Specifically, defendant argues that the arresting officer lacked sufficient articulable facts to justify an investigatory stop of defendant. See Ill. Rev. Stat. 1991, ch. 38, par. 107—14; *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

On January 5, 1990, Elgin police detectives Mark Brictson and Phil Danner were conducting surveillance of a building at 271 Villa Street. They set up their surveillance at the corner of Gifford and Villa, approximately a quarter block from the building, which was a "known dope house."

At about 8:52 p.m., the officers observed a vehicle pull into the driveway of an apartment building at the corner of Gifford and Villa. The car drove up the driveway so that the officers lost sight of it. Moments later, Brictson saw a black male walking east across front yards and heading toward 271 Villa. The building at 271 Villa contains four apartments, two on the lower floor and two on the upper floor. The man entered the side door of that building, which leads only to the upper apartments. Less than a minute later, Brictson saw a black male walking west toward the officers. Brictson believed this man was the same one he had seen recently walking toward the house. The man proved to be defendant.

As defendant approached the officers, they stepped in front of him and announced their office. Brictson noticed that defendant had his mouth closed and his lips were tight "as if there were something in his mouth." Both officers shined flashlights into defendant's mouth, whereupon they noticed a folded paper packet on his tongue. Brictson ordered defendant to spit it out, and defendant complied. The packet was determined later to contain cocaine.

Defendant was charged with unlawful possession of a controlled substance. He filed a motion to quash his arrest and suppress the cocaine, contending that the officers lacked specific articulable facts to justify the investigatory stop. Following a hearing at which defendant and Officer Brictson testified, the court denied the motion.

Defendant then waived a jury trial, and the court conducted a bench trial at which the parties stipulated to all the evidence. The court found defendant guilty and sentenced him to two years' probation. Following denial of his post-trial motion, defendant appealed.

On appeal, defendant contends that the court erred in denying his motion to suppress. He maintains that the facts known to the officers did not provide a reasonable basis for a *Terry* stop and, even assuming the initial stop was proper, the "search" of defendant's mouth was beyond the scope of a permissible search incident to the stop. The State responds that the officers had reasonable grounds for the initial stop. The State further contends that the removal of the cocaine from defendant's mouth was not a "search" incident to the *Terry* stop, but was a voluntary act by the defendant.

A police officer may make a valid investigatory stop absent probable cause for an arrest, provided that the officer's decision is based on specific, articulable facts which warrant the investigative stop. (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1879-80.) An officer may properly stop a person if the officer possesses knowledge of sufficient articulable facts to create a reasonable suspicion that the person has committed, or is about to commit, a crime. Ill. Rev. Stat. 1989, ch. 38, par. 107—14; *People v. Dionesotes* (1992), 235 Ill. App. 3d 967, 969; Frazier, Jones, Alesia, *Survey of Illinois Law: Criminal Procedure*, 16 S. Ill. U. L.J. 841, 850 (1992).

■ At the time they stopped defendant, the officers were aware of the following facts. The building at 271 Villa was a "known dope house." Brictson was aware that a search of the upper floor of the building conducted by officers of the Metropolitan Enforcement Group in March 1989 turned up narcotics. Brictson personally participated in a search of the premises in April 1989 which uncovered drug paraphernalia. Since that time, Brictson had arrested seven individuals near the building who possessed narcotics. He had also stopped one or two individuals at that location who did not possess narcotics. Defendant's behavior—parking at a location near the building and walking across lawns, entering the door leading to the upper floor and remaining less than a minute—was consistent with that of others Brictson had observed at that location who were later discovered to possess narcotics.

Brictson admitted, however, that he did not know defendant and he did not see what defendant did once he entered the outer door of the building. Moreover, the record contains no evidence that Brictson observed any crime being committed or that he had received a report of any crime in the area.

The trial court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162.) On the facts of this case, we conclude that the court's decision to deny the motion to suppress was manifestly erroneous. The facts known to the officers simply did not establish an articulable basis to believe that a crime had been, or was about to be, committed. The officers merely observed defendant leave a car parked near the subject premises, enter the building, remain for a short time, and leave. The officers did not observe any transactions within the building or hear any conversations. They did not know what defendant did while inside the building. They had not received a report of any crime or suspicious activity in the vicinity. Their deci-

sion to stop defendant was based on no more than a hunch that he might be involved in drug activity.

The facts of this case are quite similar to those of *People v. Jones* (1989), 181 Ill. App. 3d 576. In that case, the officers observed defendant in the vicinity of a "suspicious vehicle." They had previously seen several people approach a vehicle similar to the one in question, remain a short time and leave. They did not, however, observe defendant violate any law. The officers nevertheless approached defendant and ordered him to lie down and submit to a search. The search revealed narcotics. This court affirmed the order suppressing the evidence.

Also similar are the facts of *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889, a companion case to *Terry*. There the officer had observed defendant talking to several "known narcotics addicts" over a period of approximately eight hours, but did not hear any conversations or see anything change hands. (392 U.S. at 64, 20 L. Ed. 2d at 935, 88 S. Ct. at 1903.) Finally, the officer approached the defendant and said, "You know what I am after." (392 U.S. at 64, 20 L. Ed. 2d at 935, 88 S. Ct. at 1903.) The defendant then reluctantly began reaching into his pocket, but the officer reached in first and recovered an envelope containing heroin. The court reversed the conviction, stating: "The inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security." *Sibron*, 392 U.S. at 62, 20 L. Ed. 2d at 934, 88 S. Ct. at 1902.

Defendant also relies on *In re F.R.* (1991), 209 Ill. App. 3d 274. The State notes that in that case the court found the initial stop valid but held that the subsequent search was unwarranted. However, in that case, the facts known to the officers were more extensive than in the present case. There, the police observed the respondent approach a car at an intersection which was known to be a drug corner. The officers had previously observed youths approach cars stopped at the intersection and engage in narcotics transactions, including the exchange of packages which proved to contain narcotics.

In the instant case, the officers did not hear any conversations or observe anything which appeared to be a drug transaction. Indeed, they were completely unaware of what defendant did after he entered the building. He might well have knocked on an inner door, found no one at home, and left. The facts simply do not lead to an articulable suspicion that a crime had been committed.

■ Assuming *arguendo* that the *Terry* stop was justified, the search of defendant's mouth went beyond the scope of a proper *Terry* search. This court has previously stated that the sole justification for a "frisk" incident to a *Terry* stop is the protection of the officer and others nearby, not to gather evidence. (*People v. Morales* (1991), 221 Ill. App. 3d 13, 17-18.) In this case, the officer testified that his primary concern when he asked defendant to spit out the package was to prevent the drugs from being destroyed. He did not conduct a patdown search prior to that time and testified that he was not primarily concerned for his safety. He did not observe a bulge in defendant's clothing, and defendant did not make any menacing gestures. On appeal, the State does not seriously contend that the officer believed the package in defendant's mouth was a weapon.

■ The State does argue that the officer's actions were not a "search" and that the spitting out of the package was a voluntary act of defendant. This argument lacks merit. Brictson testified that immediately upon approaching defendant he ordered him to open his mouth. Both Brictson and his partner shined flashlights into his mouth. Upon observing the packet, Brictson ordered defendant to spit it out. The officer immediately retrieved and examined it. It is disingenuous to maintain that these actions were not a "search." (See *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (officer not justified in thrusting his hand into defendant's coat pocket); (*People v. Trice* (1978), 56 Ill. App. 3d 849 (officer's thrusting hand into pocket of coat being carried by defendant's companion was beyond the scope of a *Terry* search).) Thus, on either basis, the defendant's motion to suppress the narcotics should have been granted.

■ Defendant demands an outright reversal without remand. The State has not interposed a request for remand in the event of a reversal. It is apparent that the State will be unable to prove its charges unless the narcotics found on respondent were properly admitted into evidence. With the required suppression of that evidence, the State would have no opportunity to prevail on a new trial. *In re F.R.*, 209 Ill. App. 3d at 283.

For the foregoing reasons, the defendant's conviction is reversed.

Reversed.

GEIGER and BOWMAN, JJ., concur.