Docket No. 90806–Agenda 6–January 2002.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARILYN LOVE, Appellee.

Opinion filed April 18, 2002.

JUSTICE FITZGERALD delivered the opinion of the court:

The defendant, Marilyn Love, was charged with possession of a controlled substance with intent to deliver after two Chicago police officers found 16 small plastic bags of rock cocaine in her mouth. During a bench trial in the Cook County circuit court, the defendant made an oral motion to suppress the cocaine. The trial court denied the defendant’s motion and ultimately convicted the defendant. The appellate court reversed the trial court’s ruling on the defendant’s suppression motion and reversed her conviction. 318 Ill. App. 3d 534.

The issue before us is whether the police officers had probable cause to arrest and search the defendant. We reverse the appellate court and reinstate the defendant’s conviction.

BACKGROUND

At trial, Chicago police officer Olson was the State’s only witness. On direct examination, Officer Olson testified that on January 29, 1999, he and his partner, Officer Retner, were conducting narcotics surveillance in a residential area on Chicago’s west side. Around 1:50 a.m., Officer Olson, looking through binoculars, saw the defendant in front of an apartment building. Nearby, he saw a man approach a person on a bicycle and give that person some currency. The person on the bicycle then directed the man toward the defendant. According to Officer Olson, the defendant then “removed an item from her mouth and handed it to that individual.” Officer Olson and his partner “approached and detained” the defendant and “asked her to spit out some objects in her mouth.” The defendant complied, and Officer Retner recovered from the ground an object which looked like a roll of clear tape with 16 small plastic bags stuck to it. The officers believed the bags contained crack cocaine.

On cross-examination, Officer Olson testified that, during his 10-minute surveillance, the person on the bicycle circled between 25 feet and 300 feet from the defendant. Officer Olson stated that he saw the man hand money to the person on the bicycle, but he did not see what the defendant handed to the man. Officer Olson did not stop the person on the bicycle or the man. As he approached the defendant, Officer Olson could not see what she had in her mouth. According to Officer Olson, “We asked her, I believe it was her name, and she had difficulty answering it. At that time I told her to spit out what she had in her mouth, and she did.” Officer Olson did not know the defendant had drugs in her mouth until she spit them out.

The defendant’s attorney then made an oral motion to suppress, asserting that the information in “the transcript” somehow conflicted with Officer Olson’s testimony. In response, the State summarized the police officers’ observations. The officers saw the man give currency to the person on the bicycle; they saw the person on the bicycle point the man toward the defendant; and they saw the defendant give the man an object out of her mouth: “Upon that they approach. Upon that they had probable cause to approach.” The trial court asked the defendant’s attorney if he wanted to present additional evidence in support of this motion; the defendant’s attorney answered no. The court ruled:

“At some point [Officer Olson] approached the defendant *** and that while conducting in essence at that point an initial Terry stop or field interview or questioning, which is allowed and codified under the Illinois Criminal Code, *** noticed she had some difficulties answering it because something was in her mouth and asked her to spit the items out. I suppose arguably so he can continue on with the questioning from the temporary detention.

At that time he observed what he believed to be contraband which was recovered. The court does not believe there’s any 4th Amendment violation. So the motion to suppress evidence based upon that lack of probable cause will respectfully be denied.”

The parties stipulated that the plastic bags contained cocaine. The defendant then testified in her own defense. Her version of the events which led to her arrest differed wildly from Officer Olson’s version. The defendant stated that a police officer grabbed her from behind and asked her some questions. According to the defendant, another officer hit her in the face and told her to open her mouth. The officer never asked her spit out what was in her mouth; “he just told me to talk.” The defendant never saw the police officers recover anything from the ground. She asserted that she did not possess or sell drugs on January 29, 1999. In rebuttal, the State offered evidence of the defendant’s 1997 conviction for delivery of a controlled substance.

The court accepted Officer Olson’s testimony, rejected that of the defendant, and found her guilty. The defendant then filed a motion for a new trial, in which she reargued her motion to suppress. The trial court denied this motion, stating:

“This was not a situation where the officers approached and arbitrarily searched the defendant recovering contraband. Which might cause some concern with regard to [the] search issue. But the officers observed what they believed to be criminal activity afoot. That being the narcotics transactions and approached to do basically a Terry stop or field investigation.

And when they attempted to speak to this defendant, they were unable to because she had something in her mouth. They did not indicate that they let–that that substance was a controlled substance and ordering to be produced, even though that might have been reasonable based on the observations.

As far as the testimony goes, it could have been chewing gum or some other foreign substance or food or some other item in her mouth. So that for the officers to effectively carry on the field interview, in accordance with statute, case law, it was necessary that she remove what was in her mouth. It was causing her difficulty in answering the questions that were being put to her.”

The defendant appealed. The appellate court reversed the trial court’s ruling on the defendant’s motion to suppress and reversed her conviction. 318 Ill. App. 3d at 538. The appellate court held that Officer Olson’s detention of the defendant was constitutional under 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), but that his search of the defendant was not: “Officer Olson effectually intruded upon defendant’s body by ordering her to spit out what was in her mouth. The officer’s actions constituted a sufficient intrusion upon defendant’s privacy interest to qualify as a search under the fourth amendment.” 318 Ill. App. 3d at 538. According to the appellate court, the defendant did not voluntarily comply with Officer Olson’s order; rather, she submitted to his authority. 318 Ill. App. 3d at 538. Although Officer Olson could demand the defendant’s name, he could not compel a response. 318 Ill. App. 3d at 538.

We granted the State’s petition for leave to appeal. See 177 Ill. 2d R. 315(a).

ANALYSIS

Initially, we note that the defendant has filed a motion to strike portions of the State’s opening brief. The defendant charges that the State raises issues before this court regarding probable cause which it never pursued below or in its petition for leave to appeal. This motion was taken with the case.

Contrary to the defendant’s assertion, the State did discuss the issue of probable cause in its petition for leave to appeal, where it argued: “police could have arrested defendant, without defendant’s compliance to ‘spit it out,’ where the police arguably developed probable cause during the 
Terry
 stop ***.” Further, as we held in 
People v. Schott
, 145 Ill. 2d 188, 201 (1991), the State may raise an issue before this court as an appellant which it did not raise before the appellate court as an appellee. Accord 
Mueller v. Elm Park Hotel Co.
, 391 Ill. 391, 398-99 (1945). We deny the defendant’s motion to strike, and turn to the merits of this appeal.

When a motion to suppress evidence involves factual determinations or credibility assessments, we will reverse the trial court’s ruling only if it is manifestly erroneous. 
People v. Buss
, 187 Ill. 2d 144, 204 (1999). 
De novo
 review of the trial court’s ruling is appropriate when the parties do not dispute the facts or the credibility of witnesses. 
People v. Sims
, 192 Ill. 2d 592, 615 (2000); see 
In re G.O.
, 191 Ill. 2d 37, 49-50 (2000) (following 
Ornelas v. United States
, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996)). Here, Officer Olson was the only witness to testify for the State at trial; the defendant’s oral motion to suppress was made immediately after his testimony. The trial court found that Officer Olson’s testimony was more credible than that of the defendant. This determination was not manifestly erroneous. Accordingly, we will review 
de novo
 the legal issues presented in this appeal under Officer Olson’s version of events. 
People v. Gonzalez
, 184 Ill. 2d 402, 412 (1998).

The fourth amendment guarantees “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const., amend. IV; accord Ill. Const. 1970, art. I, §6; see 
Fink v. Ryan
, 174 Ill. 2d 302, 314 (1996) (“This court has construed the search and seizure language found in section 6 in a manner that is consistent with the Supreme Court’s fourth amendment jurisprudence”). Reasonableness in this context generally requires a warrant supported by probable cause. 
Katz v. United States
, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967). The United States Supreme Court, however, in 
Terry
, provided an exception to the warrant and probable cause requirements. Under 
Terry
, if a police officer has “knowledge of sufficient articulable facts at the time of the encounter to create a reasonable suspicion that the person in question has committed, or is about to commit, a crime” (
People v. Smithers
, 83 Ill. 2d 430, 434 (1980)), the officer may briefly stop and detain the person to make reasonable inquiries (
People v. Sorenson
, 196 Ill. 2d 425, 432 (2001)). Additionally, if the officer reasonably believes that the person questioned may be armed and dangerous, the officer may conduct a limited patdown search for weapons, commonly called a frisk. 
People v. Flowers
, 179 Ill. 2d 257, 262 (1997); accord 
Sorenson
, 196 Ill. 2d at 432; see 
United States v. Arvizu
, ___ U.S. ___, 151 L. Ed. 2d 740, 122 S. Ct. 744 (2002).
(footnote: 1) Recently, this court stated:

“Viewed as a whole, the situation confronting the police officer must be so far from the ordinary that any competent officer would be expected to act quickly. The facts supporting the officer’s suspicions need not meet probable cause requirements, but they must justify more than a mere hunch. The facts should not be viewed with analytical hindsight, but instead should be considered from the perspective of a reasonable officer at the time that the situation confronted him or her.” 
People v. Thomas
, 198 Ill. 2d 103, 110 (2001).

Arguing that Officer Olson exceeded the bounds of a 
Terry
 stop, the defendant directs us to 
People v. Harper
, 237 Ill. App. 3d 202 (1992). In 
Harper
, police officers were conducting surveillance of a house known for drug dealing. Around 9 p.m., the officers saw the defendant enter the house and emerge from it less than a minute later. As the defendant approached the officers, they stepped in front of him and identified themselves as the police. One of the officers noticed that the defendant had his mouth closed and his lips were pursed tight “as if there were something in his mouth.” Both officers shined flashlights into the defendant’s mouth and saw a folded paper packet on his tongue. One of the officers ordered the defendant to spit the packet out, and he complied. The packet later tested positive for cocaine. The defendant filed a motion to suppress, which the trial court denied. The defendant was then convicted of possession of a controlled substance and appealed. On appeal, the defendant argued that the officers did not have a reasonable suspicion to justify a 
Terry
 stop. The defendant further argued that even if the stop were proper, the search of the his mouth was not.

The appellate court held that the 
Terry
 stop was improper:

“The facts known to the officers simply did not establish an articulable basis to believe that a crime had been, or was about to be, committed. The officers merely observed defendant leave a car parked near the subject premises, enter the building, remain for a short time, and leave. The officers did not observe any transactions within the building or hear any conversations. They did not know what defendant did while inside the building. They had not received a report of any crime or suspicious activity in the vicinity. Their decision to stop defendant was based on no more than a hunch that he might be involved in drug activity.” 
Harper
, 237 Ill. App. 3d at 205-06.

The court also held that were the stop justified, the search of the defendant’s mouth went beyond the weapons frisk permissible under 
Terry
. 
Harper
, 237 Ill. App. 3d at 207. The officers primary concern was preserving evidence, not protecting themselves. 
Harper
, 237 Ill. App. 3d at 207.

Unlike the officers in 
Harper
, Officer Olson observed what appeared to be a drug transaction. He could have reasonably concluded that the man gave the person on the bicycle money in exchange for something illicit which the defendant pulled from her mouth. Innocent explanations are implausible: common sense dictates that the man probably did not go out at 1:50 a.m. in late January to pay for prechewed gum. Officer Olson had more than a mere hunch; he had first-hand knowledge of sufficient facts to create a reasonable suspicion that the defendant was selling drugs. See 
State v. Desmond
, 593 So. 2d 965, 969 (La. App. 1992) (holding that a police officer had reasonable suspicion for an investigatory stop after observing the defendant place a plastic packet into his mouth while retracing his steps away from the officer). Though the defendant complains about “the terseness of this record,” her oral motion to suppress came after Officer Olson had completed his testimony, and her attorney declined the trial court’s invitation to present additional evidence. We agree with the appellate court that Officer Olson’s detention of the defendant was constitutional.

Consequently, Officer Olson could ask the defendant her name. A police officer does not violate the fourth amendment merely by approaching a person in public to ask questions if the person is willing to listen. See 
Immigration & Naturalization Service v. Delgado
, 466 U.S. 210, 216, 80 L. Ed. 2d 247, 255, 104 S. Ct. 1758, 1762 (1984); see also 
Florida v. Royer
, 460 U.S. 491, 497-98, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324 (1983) (“The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way”). However, Officer Olson’s statement that the defendant should “spit out what she had in her mouth” was an imperative, not an interrogatory. See 
Harper
, 237 Ill. App. 3d at 207; see also 
People v. Anthony
, 198 Ill. 2d 194, 202 (2001); but see 
Florida v. Y.B.
, 659 So. 2d 323, 324 (Fla. App. 1994) (
per curiam
) (holding that a police officer legally could ask a juvenile suspect his name and ask him to remove an object from his mouth in order to facilitate communication). We agree with the appellate court that the defendant did not voluntarily agree to spit out the object in her mouth. Officer Olson’s order is constitutionally permissible only if it constituted a search incident to a lawful arrest. See 
People v. Bailey
, 159 Ill. 2d 498, 503 (1994); see generally 
Chimel v. California
, 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040 (1969).

In order to make a valid, warrantless arrest, a police officer must have probable cause to arrest. 
Buss
, 187 Ill. 2d at 204; 
People v. Montgomery
, 112 Ill. 2d 517, 525 (1986); see 
Beck v. Ohio
, 379 U.S. 89, 91, 13 L. Ed. 2d 142, 145, 85 S. Ct. 223, 225 (1964); see also 725 ILCS 5/107–2(c) (West 1998). Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime. 
Sims
, 192 Ill. 2d at 614. That is, the existence of probable cause depends upon the totality of the circumstances at the time of the arrest. 
People v. Tisler
, 103 Ill. 2d 226, 237-38 (1984) (following 
Illinois v. Gates
, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983)). “In dealing with probable cause, *** we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.” 
Brinegar v. United States
, 338 U.S. 160, 175, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310 (1949); accord 
People v. Wright
, 111 Ill. 2d 128, 146 (1985) (probable cause is a practical concept).

Our appellate court recently addressed whether the visible presence of a suspicious object in a detainee’s mouth provides probable cause to arrest. In 
People v. Bunch
, No. 1–00–3245 (February 13, 2002), a police officer stopped a car for a traffic violation. After arresting the driver for driving without a license, the officer told the defendant, a passenger, to exit the car. The officer, while shining a flashlight in the defendant’s face, asked the defendant some questions because he was “ ‘curious to find out exactly who he was.’ ” 
Bunch
, slip op. at 2. During this exchange, the officer saw a small clear plastic object containing white material in the defendant’s mouth. The officer suspected that the plastic object was filled with cocaine or heroin. He arrested the defendant and ordered him to spit out the object. The white material tested positive for heroin. The defendant filed a motion to suppress the heroin, arguing that the officer had no reasonable suspicion to detain him. The trial court denied the defendant’s motion and found him guilty of possession of a controlled substance.

The appellate court held that the officer’s detention of the defendant was unlawful. 
Bunch
, slip op. at 7. The defendant was a passenger in the car of an arrestee and did nothing to create a reasonable suspicion that he was engaged in criminal activity. 
Bunch
, slip op. at 6. The officer spoke to the defendant because he was curious about his identity, but the court noted, “Curiosity is not a good reason to detain.” 
Bunch
, slip op. at 7. The court further held that the officer lacked probable cause to arrest the defendant: though the officer suspected that the defendant had drugs in his mouth, “[s]uspicions, no matter how reasonable, do not add up to probable cause to arrest.” 
Bunch
, slip op. at 8.

Unlike the officer in 
Bunch
, Officer Olson had reasonable suspicion to detain the defendant. More importantly, unlike the officer in 
Bunch
, Officer Olson’s suspicion rose to the level of probable cause. As we have noted, Officer Olson saw the man trade currency to the person on the bicycle for something in the defendant’s mouth. When he approached the defendant to ask her name and received a garbled response, Office Olson could have reasonably concluded, based on the totality of the circumstances, that the defendant was concealing drugs in her mouth. Reasonable suspicion ripened into probable cause to arrest, and Officer Olson’s order to the defendant was a search incident to a lawful arrest. See 
McCloud v. State
, 736 So. 2d 1131, 1133 (Ala. Crim. App. 1998) (“When [the officer] saw what appeared to be crack cocaine in the appellant’s mouth, his suspicion [that the appellant was engaged in criminal activity] was sufficiently confirmed to supply him with probable cause to seize the substance”); 
State v. Lewis
, 115 Ariz. 530, 532-33, 566 P.2d 678, 680-81 (1977) (“The actions of appellant in speaking with her teeth clenched and in swallowing when asked to open her mouth, together with the tip from [a person at her residence], gave the officers probable cause to believe that appellant had drugs in her mouth”); see also 
United States v. Paleo
, 967 F.2d 7, 9 (1st Cir. 1992); 
Curtis v. State
, 748 So. 2d 370, 374-75 (Fla. App. 2000); 
State v. Victor
, 76 Ohio App. 3d 372, 375-76, 601 N.E.2d 648, 651 (1991); 
Barnes v. State
, 870 S.W.2d 74, 79 (Tex. Ct. App. 1993).

CONCLUSION

For the reasons we have discussed, we reverse the judgment of the appellate court and reinstate the defendant’s conviction.

Appellate court judgment reversed;

circuit court judgment affirmed.

FOOTNOTES
1:     
1
The General Assembly has codified both the stop and frisk aspects of 
Terry
 in the Code of Criminal Procedure. See 725 ILCS 5/107–14 (West 1998) (“Temporary Questioning without Arrest”); 725 ILCS 5/108–1.01 (West 1998) (“Search During Temporary Questioning”).