2021 IL App (1st) 181981-U

FIFTH DIVISION
March 31, 2021

No. 1-18-1981

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17 CR 12231 |
| | ) | |
| KENNY PUGH, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Rochford in the judgment.

**ORDER**

¶ 1    *Held:* We affirm the defendant's aggravated unlawful use of a weapon convictions. The circuit court properly denied the defendant's motion to quash arrest and suppress evidence because he abandoned the firearm, which terminated his claim for fourth amendment protections. The State presented sufficient evidence to convict the defendant of aggravated unlawful use of a weapon beyond a reasonable doubt. The State need not present rebuttal evidence for an exemption under the aggravated unlawful use of a weapon statute. The defendant forfeited his arguments that the circuit court committed multiple errors. The defendant failed to establish plain error.

¶ 2    Defendant Kenny Pugh was charged with six counts of aggravated unlawful use of a weapon (AUUW). After a bench trial, he was convicted of AUUW and sentenced to one year in prison.

¶ 3     On appeal, defendant argues that the circuit court erred by denying his motion to quash arrest and suppress evidence because police lacked probable cause to arrest him. Defendant also contends the State failed to prove he was guilty of AUUW because a preponderance of the evidence established that he was an invitee on private property and, therefore, exempt from violating the AUUW statute. Finally, defendant argues the circuit court improperly: (1) speculated that the State could present rebuttal witnesses but refused to because none were available; (2) refused to view the entirety of properly admitted video evidence submitted in support of his motion to suppress; and (3) recollected incorrect evidence that resulted in a guilty finding of possessing a gun in a public alley, although the evidence showed police arrested him in the backyard of a private residence. Defendant contends these errors cumulatively denied him a fair trial and a rehearing of his motion to suppress. We affirm.

¶ 4                                   BACKGROUND

¶ 5     On three separate occasions during the overnight hours of July 28, 2017, Chicago police addressed noise complaints emanating from a backyard party occurring at 5914 South Emerald Avenue. At 2:49 a.m., police entered the yard and arrested defendant for possession of a gun, the handle of which was visible to officers viewing him through a wrought iron fence surrounding the yard. The State charged defendant with three counts of AUUW with no firearm owner's identification card (FOID) and no concealed carry license (CCL), and three counts of AUUW for possession of a weapon in a public alley.

¶ 6     Defendant moved to quash his arrest and suppress evidence, arguing that the police illegally entered private property and arrested him without probable cause, and that the officers failed to inquire whether he possessed a FOID card or a CCL. He also argued that the officers lacked a search warrant to enter the private property and an arrest warrant to apprehend him.

¶ 7    At the suppression hearing, Chicago police officer Robert Bandola testified that on July 28, 2017, at 2:49 a.m., he and his partner, Officer Michael Filetti, responded to a noise complaint at the subject property. This was the third noise complaint of the night at that address. When he arrived at that location, he observed a large group of approximately 50 people congregated at the back of the apartment building and in an adjoining alleyway. The backyard of the building was enclosed by a black wrought iron fence. Officer Bandola and other officers already at that location stood outside the fence.

¶ 8    Officer Bandola saw defendant standing in the backyard, leaning against a car parked inside the fence. Officers Filetti and Ferrantella observed the butt of a handgun protruding from defendant's pants pocket. One of the officers reported the presence of a gun to the supervisor, who then directed the officers to enter the premises and retrieve the gun. Officer Bandola stated that he received permission from the owner to enter the backyard to investigate. He did not have a search warrant for the property or an arrest warrant for defendant or any other individual on the premises.

¶ 9    After the officers entered the backyard, they approached defendant and ordered him to get onto the ground. Defendant complied with the police command and laid on the ground as Officer Bandola recovered the gun. He did not see the gun either on defendant's person or when defendant attempted to dispose of the gun underneath the parked car. Officer Filetti stood with one foot on the weapon to secure it until Officer Bandola picked it up. After the officers handcuffed defendant, he did not tell Officer Bandola that he had a FOID card or CCL. He also did not tell Officer Bandola that he had the property owner's permission to carry a gun onto the property. While in custody, Officer Bandola did not inquire whether defendant resided at that address or whether he possessed a FOID card or CCL. In addition, Officer Bandola did not inquire whether defendant had permission to carry the gun onto the owner's property that night.

¶ 10 Officer Filetti provided similar testimony to Officer Bandola. He observed defendant inside the open gate of a wrought iron fence at the property. The gate was wide enough so that a vehicle could drive through. Officer Filetti observed two vehicles parked within the fence. He saw one dozen or more people standing in the backyard and watched defendant walk in circles around a group of people. He looked inside the backyard using his flashlight. He observed the handle of a gun sticking out of defendant's front right pants pocket. He notified Sergeant Zattair, the supervisor at the scene, who ordered him to enter the backyard and apprehend defendant. Officer Filetti stated that about 10 to 15 officers entered the backyard without permission of the owner and approached defendant, ordering him to keep his hands up. The officers neither had a search warrant to enter the property nor an arrest warrant for defendant. Officer Filetti observed defendant "lean up against a car and blade himself and his handgun away from *** our view." Three other people surrounded defendant to shield him from the approaching officers. Defendant lowered his hands. Officer Filetti saw defendant put his hand on the handle of the weapon and throw it to the ground. The gun landed underneath the bumper of the parked car next to which defendant was standing. After defendant disposed of the weapon, the officers apprehended him. Officer Filetti placed his foot over the gun to secure it from the others in the backyard. He did not ask defendant whether he resided at the property or whether he carried a FOID card or CCL. In addition, Officer Filetti did not ask defendant whether he had permission to carry a gun onto the property.

¶ 11 Officer Filetti was not wearing a body camera that night, but testified that Officer Ferrantella was wearing one and that he had viewed the footage from that camera, which accurately depicted the events that occurred. The parties stipulated to the publication of Officer Ferrantella's body camera footage. Officer Filetti identified still photographic images taken from Officer Ferrantella's body camera footage, including two photographs depicting defendant with the butt

of a handgun protruding from his right front pants pocket. Officer Filetti circled the portion of the photographs depicting the handle of the gun. He identified defendant as the person depicted in the photographs. Thereafter, the State presented the video footage to the circuit court.

¶ 12     The State moved for a directed finding on defendant's motion to quash arrest and suppress evidence. After hearing argument from the parties, the circuit court granted the State's motion and denied defendant's motion to supress, finding:

> "First off, the gun was abandoned. There was no search of [defendant]. The gun was taken out of his pocket by him before it was placed in an area off of his person after it was clear from the testimony of the officer[s] that he made together with these other individual[s'] conscious efforts to prevent the police from getting to him and getting the gun, which is certainly circumstantial evidence of his belief at the time which the officer[s] could conclude constituted consciousness of guilt. Whether he was an invitee or not, maybe that's a trial issue. It's not an issue here at a motion to suppress. The police do not have to conduct an investigation and question the 50 people who were there to find out who the property owner[s] or lessee[s] were however long that might have taken. And this is clear from the video it would have taken a long time. *** Such was the manner in which everybody at the party was conducting themselves. To suggest that the police have to conduct an investigation to find out who the lawful owner is and then question that lawful owner whether some as yet unidentified person who['s] got a gun sticking out of his pocket at three o'clock in the morning at 59th and Emerald is not what the constitution requires police officer[s] to do in compliance with the Fourth Amendment to the United States Constitution."

¶ 13    At trial, Officer Filetti testified similarly to the testimony he provided during the suppression hearing. He described the events depicted in the video footage from Officer Ferrantella's body camera, including the footage of defendant standing in the backyard with the butt of a handgun protruding from his pants pocket. In addition, he testified regarding the footage showing defendant reaching for the handgun, pulling it out of his pocket, and throwing it to the ground. He identified defendant in court as the person depicted in the footage from the body camera.

¶ 14    When asked if he personally heard defendant making any noise, Officer Filetti responded that defendant "was in a backyard with deejay equipment playing loud music at 3 in the morning." Officer Filetti did not know if defendant had been working as a deejay that night.

¶ 15    Officer Bandola testified similarly to his earlier testimony. He wore a body camera that night, which video footage was admitted into evidence. He stated that the footage fairly and accurately depicted what he observed. In the video, defendant was shown lying on his stomach, while Officer Filetti's foot stood on the gun. The video showed Officer Bandola picking up the weapon from the ground. He testified that the weapon was a .357 Magnum containing six live rounds. He inventoried the weapon pursuant to department policy. After his arrest, defendant provided his home address to Officer Bandola.

¶ 16    The parties stipulated that defendant did not have a valid FOID card or CCL on July 28, 2017. After the State rested, defendant moved for a directed verdict, which the circuit court denied.

¶ 17    Cedric Carr, a friend of defendant, testified for the defense. On the night of the party, he resided on the first floor at the property, which he described as a two-flat apartment building. He hosted the backyard party, and it extended past midnight. He described the yard as "wide" with a large gate that leads to a "whole parking lot on 59th." Carr invited family members, friends, and

defendant, who he described as his best friend, to celebrate his brother's upcoming wedding. About 70 to 80 people attended the party, which began at 8:00 p.m. Police officers arrived at 8:00 and again at 11:00 to request that the volume of music being played be lowered. The police returned after midnight and ordered partygoers to move their cars from the parking lot behind the residence and then left again. Two hours later, police arrived again and according to Carr, "bum rush[ed] right in," and "force[d] [defendant] down." Carr stated that defendant was standing by the back door of the apartment at that time, furthest away from the gate to the backyard. Carr stated that he invited defendant to bring a weapon with him. He explained, "[i]t's gang related over there and I want[ed] to make sure my people enjoy themsel[ves] right that because a month prior to that, a lot of people across the street are gang ready."

¶ 18    None of the police officers at the scene asked Carr whether he had given defendant permission to bring a gun to the party. Carr neither knew nor asked defendant whether he possessed a valid FOID card or CCL. Although he was concerned about the safety of his family and friends at the party, Carr did not hire an armed security guard. As the officers entered Carr's property to apprehend defendant, Carr never told the officers that he asked defendant to bring a weapon onto the property. Carr acknowledged that he observed himself in the police video footage and that he had an opportunity to speak to the sergeant, but did not tell the sergeant that he had asked defendant to bring the weapon. He explained that he did not have the time to speak to the sergeant or the other officers. An investigator from the State's Attorney's Office also spoke to Carr in May 2018, but Carr did not tell the investigator that he asked defendant to bring the weapon that night. The first time Carr stated that he invited defendant to bring the gun was at trial.

¶ 19    Following closing argument, the circuit court found defendant guilty on all counts. The court found Carr's testimony not credible. The court stated that "[n]o one acted consistent with any such invitation or permission. There was none."

¶ 20    Defendant moved for a new trial, arguing that the circuit court erred in denying his motion to quash arrest and suppress evidence. Defendant also contended that police never saw him in the adjoining alley and, therefore, he should have been found not guilty of counts 4, 5, and 6, which charged him with carrying the weapon in a public alley.

¶ 21    During argument on the motion, defense counsel stated that the police tackled defendant. The circuit court responded, "Your client was hiding under a car." Defense counsel replied, "[h]e was not hiding under a car, Judge. They said that he put a gun under the car, but he was not hiding under a car." When defense counsel finished the argument, the court stated that it reviewed defendant's motion and had "independent recollection recalling the case." The court stated that "the video evidence from the Officers['] body cameras, makes it clear that [defendant] did not have anybody's permission to have the gun on Mr. Carr's property at all, because if he had, he would not have conducted himself in the manner in which he did." The court denied defendant's motion for a new trial and vacated the finding of guilty on counts 4, 5, and 6. The court merged the remaining counts into count 1 and sentenced defendant to one year in prison. This appeal followed.

¶ 22                                          ANALYSIS

¶ 23    Defendant argues that the circuit court erred by denying his motion to quash arrest and suppress evidence. Defendant also contends the State failed to prove he was guilty of AUUW because a preponderance of the evidence established that he was an invitee onto the property and, therefore, exempt from violating the AUUW statute (720 ILCS 5/24-1.6(a)(1), 24-2(b)(5) (West

2016)). Finally, defendant argues that the circuit court ceased to be a fair arbiter when it: (1) speculated that the State "perhaps" had rebuttal witnesses who were unavailable for trial; (2) refused to fully view video evidence at the hearing on the motion to quash arrest and suppress evidence; and (3) recollected incorrect evidence that resulted in a guilty finding of possessing a gun in a public alley, although the evidence showed police arrested him in the backyard of a private residence. The circuit court's ruling on defendant's motion to quash arrest and suppress evidence is dispositive to the outcome of this appeal.

¶ 24                    Motion to Quash Arrest and Suppress Evidence

¶ 25    Defendant argues his motion to quash arrest and suppress should have been granted because police lacked probable cause to arrest him for the possession of a gun in a private backyard. Police entered the backyard without a search warrant for the property or an arrest warrant for defendant. The officers placed defendant in custody immediately after seeing the handle of a gun protruding from his clothing without observing him engage in any criminal activity or determining whether he was lawfully carrying a gun. Defendant argues the illegal arrest led to the seizure of the gun and to the police ascertaining his identity. He contends that the State would not have been able to prove the charged offenses without the illegally obtained evidence.

¶ 26    This court applies a two-part standard of review to a circuit court's ruling on a motion to quash arrest and suppress evidence. *People v. Hopkins*, 235 Ill. 2d 453, 471 (2009). We defer to a circuit court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence. *Id*. However, we are free to undertake its own assessment of the facts in relation to the issues presented and draw its own conclusions in deciding what relief, if any, should be granted. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). We review *de novo* the circuit court's ultimate legal ruling on a motion to suppress. *Id*.

¶ 27    The United States and Illinois constitutions guarantee citizens the right against unreasonable searches and seizures. U.S. Const. amends. IV, XIV; Ill. Const. 1970, art. I, § 6. "Reasonableness under the fourth amendment generally requires a warrant supported by probable cause." *People v. Sanders*, 2013 IL App (1st) 102696, ¶ 12. However, our supreme court has recognized three types of police-citizen encounters that do not constitute an unreasonable seizure: (1) arrests, which must be supported by probable cause; (2) a brief investigative stop, also known as a *Terry* stop (*Terry v. Ohio*, 392 U.S. 1 (1968)); and (3) encounters that do not involve coercion or detention and therefore do not implicate fourth amendment interests. *Luedemann*, 222 Ill. 2d at 544.

¶ 28    In this case, the parties do not dispute that police seized defendant when they placed him under arrest. However, defendant argues in his reply brief that the State forfeited its argument on appeal that police effectuated a *Terry* stop. Indeed, the record shows that the State never argued below that the police conducted an investigative stop under *Terry*.

¶ 29    On this very issue, our supreme court has held that "[t]he State may not now, almost as an afterthought, argue that the defendant was stopped under a totally different theory than argued" before the circuit court. *People v. Adams*, 131 Ill. 2d 387, 395 (1989). Illinois courts have long held that an issue not raised in the circuit court is considered forfeited. *Id*. "This principle applies equally to the State and the defendant in a criminal case." *Id*. Thus, the State forfeited its argument that it properly conducted an initial *Terry* stop of defendant because it failed to raise this issue below.

¶ 30    During argument before the circuit court on defendant's motion to quash arrest and suppress evidence, the State contended that the officers were responding to an excessive noise complaint, which brought them to the property. In plain view, they observed the butt of a handgun

protruding from defendant's waistline. The State argued that the weapon was not concealed under the definition of the CCL statute. The State also contended that defendant had no expectation of privacy in the backyard because "nothing [had] been done to prevent anybody walking by that alley to see what's going on in that backyard." Finally, the State argued that when defendant tossed the handgun under the parked car, he abandoned his possessory interest and, therefore, had no standing to argue that it should be suppressed.[1]

¶ 31 We may affirm the circuit court's judgment on any basis contained in the record. *People v. Williams*, 193 Ill. 2d 306, 349 (2000) ("We may affirm the circuit court's decision for any appropriate reason, regardless of whether the circuit court relied on those grounds[.]"). We find in this case, defendant abandoned the firearm. His actions constituted a voluntary relinquishment of the property and any expectation of privacy therein under the fourth amendment.

¶ 32 For constitutional purposes, a person is seized when he is placed under arrest. *People v. Lopez*, 229 Ill. 2d 322, 346 (2008). Under the fourth amendment, an arrest must be accompanied by a warrant supported by probable cause. *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001); see also *People v. Robinson*, 167 Ill. 2d 397, 405 (1995) ("A warrantless arrest is unlawful absent probable cause."); *People v. Montgomery*, 112 Ill. 2d 517, 525 (1986) ("An arrest executed without a warrant is valid only if supported by probable cause.") "Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *People v. Wear*, 229 Ill. 2d 545, 563-64 (2008) (citing *People v. Love*, 199 Ill. 2d 269, 279 (2002)). The existence of probable cause depends upon

---

[1] We note that although the State has framed the issue as one of "standing" to challenge the seizure of the gun, Illinois courts have dispensed with the rubric of "standing" when analyzing fourth amendment claims. See *People v. Pitman*, 211 Ill. 2d 502, 521 (2004). Instead, the relevant inquiry is whether the person claiming the protections of the fourth amendment had a legitimate expectation of privacy in the place searched. *Id.* at 514.

the totality of the circumstances at the time of the arrest. *Wear*, 229 Ill. 2d at 564 (citing *Love*, 199 Ill. 2d at 279). The evidence upon which probable cause is based need not be sufficient to convict, but must be more than a hunch or mere suspicion. *People v. Reynolds*, 94 Ill. 2d 160, 166 (1983).

¶ 33    A person commits the offense of AUUW when he knowingly carries a loaded, uncased, immediately accessible handgun and one of several aggravating factors is present. 720 ILCS 5/24-1.6(a)(1), (3) (West 2016). Under the AUUW statute, a person may lawfully carry a loaded, uncased, and immediately accessible firearm on his own land or on the land of another person as an invitee with that person's permission. 720 ILCS 5/24-1.6(a)(1), (3)(A) (West 2016).

¶ 34    Defendant argues that the backyard at 5914 South Emerald was an extension of the home and, thus, he did not possess a gun in public and had a legitimate expectation of privacy as an invitee. He contends that, after our supreme court's 2013 decision in *People v. Aguilar*, 2013 IL 112116, his conduct could not have given rise to probable cause without other evidence of a crime.

¶ 35    Our supreme court has held that "[a]bandoned property is not subject to Fourth Amendment protection." *People v. Pitman*, 211 Ill. 2d 502, 519 (2004) (quoting *United States v. Basinski*, 226 F.3d 829, 836-37 (7th Cir. 2000)). Fourth amendment protection against an unreasonable search and seizure does not extend to abandoned property because the possessor's right of privacy in the property has been terminated. *People v. Hoskins* 101 Ill. 2d 209, 220 (1984) (*cert. denied Hoskins v. Illinois*, 469 U.S. 840 (1984)); see also *Abel v. United States*, 362 U.S. 217, 241 (1960) (noting there is nothing unlawful in the government's appropriation of abandoned property). Abandoned property may, therefore, be searched and seized without a warrant or a showing of probable cause. *Id*.; see also *People v. Sutherland*, 223 Ill. 2d 187, 230 (2006). Property has been held to be abandoned when dropped to the ground or left behind in a place accessible to the general public. *Id*. at 219-20.

¶ 36    In *People v. Thomas*, 2019 IL App (1st) 170474, ¶ 42, this court explained that for abandonment:

> "the State must demonstrate by a preponderance of the evidence that the defendant's voluntary words or conduct would lead a reasonable person in the search officer's position to believe that the defendant relinquished his property interest in the item searched or seized. As this is an objective test, it matters not if the defendant desires to later reclaim the item. What matters is the external manifestations of the defendant's intent as judged by a reasonable person who possesses the same knowledge available to the police. We look at the totality of the circumstances, but pay particular attention to explicit denials of ownership and to any physical relinquishment of the property." (Internal citations and quotations omitted.)

¶ 37    Defendant here attempts to conflate the issue of privacy, claiming police had no constitutional authority to enter the backyard because he was an invitee on private property. However, defendant can only claim he was an invitee for purposes of his status under the AUUW statute. The "property" at issue in this case was the gun defendant carried in his pants pocket, not his friend's backyard. It is well established that while an overnight guest in a home may claim the protection of the fourth amendment, one who is *merely present* with the consent of the householder may not. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998); *People v. Williams*, 186 Ill. App. 3d 467, 472 (1989) ("Merely because the defendant is occasionally on the premises as a guest or invitee, and is on the premises at the time of the allegedly illegal search, does not confer standing."). In short, defendant cannot claim a legitimate privacy expectation under the fourth amendment as an invitee onto his friend's property. *Id.*

¶ 38     Here, the video footage from Officer Ferrantella's body camera and supporting testimony demonstrate that as soon as the officers entered the backyard, defendant made furtive movements in an effort to dispose of the gun. He turned his body away from the officers to shield himself from their view. A few partygoers surrounded defendant in further effort to shield him. Officer Filetti observed defendant reach for the gun, pull it out of his pocket, and dispose of it underneath the parked car next to which he was standing. We find the State demonstrated by a preponderance of the evidence that defendant's voluntary conduct would lead a reasonable person in the officers' position to believe that he relinquished his property interest in the firearm. Thus, defendant's actions in disposing of the gun terminated his right of privacy in the property and his fourth amendment protections therein. "Because no search or seizure occurs when police take hold of an abandoned item, the validity of the arrest is irrelevant." *Thomas*, 2019 IL App (1st) 170474, ¶ 44. Accordingly, we find the circuit court properly denied defendant's motion to quash arrest and suppress evidence.

¶ 39                                 Sufficiency of the Evidence

¶ 40     Defendant next argues that the State failed to prove him guilty of AUUW beyond a reasonable doubt because a preponderance of the evidence at trial established that he was an invitee and, thus, exempt from violating the statute. He contends that because the State did not rebut the evidence that he was an invitee with permission to carry a firearm, he met his burden of proof for the exemption.

¶ 41     When a defendant contests the sufficiency of the evidence admitted at trial, the appellate court, after reviewing the evidence in the light most favorable to the State, must determine if any rational trier of fact could have found each element of the crime proven beyond a reasonable doubt. *People v. Murray*, 2019 IL 123289, ¶ 19 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).

The appellate court "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Davison*, 233 Ill. 2d 30, 43 (2009). The trier of fact is responsible for determining the witnesses' credibility and the weight given to their testimony, resolving conflicts in the evidence, and drawing reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). "[W]e will not substitute our judgment for that of the trier of fact on these matters." *Id.* Therefore the trier of fact's findings are entitled to deference, although they are not conclusive. *Murray*, 2019 IL 123289, ¶ 19. A conviction will not be reversed " 'unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.' " *People v. Lloyd*, 2013 IL 113510, ¶ 42 (quoting *People v. Collins*, 214 Ill. 2d 206, 217 (2005)). We note that defendant cites *People v. Smith*, 71 Ill. 2d 95 (1978) to contend *de novo* review applies to whether he proved the exemption, however, *Smith* does not stand for that proposition.

¶ 42    The invitee clause creates an exemption to the AUUW statute, but not an element of the offense. *People v. Tolbert*, 2016 IL 117846, ¶ 17. Therefore, a defendant must prove his entitlement to the exemption and the State has no obligation to include the invitee requirement in the charging instrument. *Id*.

¶ 43    In *People v. Fields*, 2014 IL App (1st) 130209, ¶ 41, the court stated that the invitee exemption in the AUUW statute "merely withdraws persons with permission from the inviter of the land or dwelling from the operation of the statute and, thus, is not descriptive of the offense." The court explained that the invitee exemption "is not part of the substantive offense of AUUW" and rejected the defendant's argument that the State was required to prove that he was not an invitee. *Id*.; see also *Smith*, 71 Ill. 2d at 105-06 ("the State need never negate any exemption"). A defendant must prove by a preponderance of the evidence that he met the invitee exemption of the

AUUW statute. *Id*. ¶ 45. The State must prove defendant guilty of the elements of AUUW beyond a reasonable doubt. *People v. Mosley*, 2015 IL 115872, ¶ 18.

¶ 44     In this case, we find defendant failed to meet his burden of proving by the preponderance of the evidence that he qualified for the invitee exemption of the AUUW statute. Carr testified at trial that he invited defendant to bring a weapon with him. The circuit court found Carr's testimony not credible, stating that "[n]o one acted consistent with any such invitation or permission. There was none." We will not substitute our judgment for that of the trier of fact on issues involving the weight of the evidence, the reasonable inferences to be drawn for the evidence, or the credibility of witnesses. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000). Further, we reject defendant's argument that the State was required to prove that he was not an invitee. See *Smith*, 71 Ill. 2d at 105-06; *Fields*, 2014 IL App (1st) 130209, ¶ 41.

¶ 45     To sustain a conviction for AUUW, the State must prove the defendant knowingly carried on or about his person any firearm while not on his land or on the land of another person as an invitee with that person's permission without a currently valid FOID card or CCL. 720 ILCS 5/24-1.6(a)(1), 3(A-5), 3(C) (West 2016).

¶ 46     Here, viewing the evidence at trial most favorable to the State, as we must (*People v. Givens*, 237 Ill. 2d 311, 334 (2010)), the evidence was sufficient to convict defendant of AUUW. The police officers' testimony and the video footage from Officer Ferrantella's body camera established that defendant carried a loaded .357 Magnum on his person while not on his land or on the land of another as an invitee with permission, without a valid FOID card or CCL. See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009) (finding the testimony of a single witness, if positive and credible, is sufficient to convict, even if contradicted by the defendant). Carr and defendant each had multiple opportunities to volunteer to the officers that defendant was invited to carry the

gun onto Carr's property that night. " '[C]ommon sense suggests that as a general matter innocent persons confronted with the fact that they are under police suspicion and called upon to clarify the situation will respond with some sort of explanation.' " *People v. Spain*, 2019 IL App (1st) 163184, ¶ 41 (quoting 4 Wayne R. LaFave, Search and Seizure § 3.6(f) (5th ed. 2012)). Neither Carr nor defendant provided any innocent explanation for why defendant possessed a gun that night. We find the State presented sufficient evidence to establish that defendant committed the offense of AUUW and that a rational trier of fact could therefore find him guilty of that offense beyond a reasonable doubt.

¶ 47                                    Alleged Circuit Court Errors

¶ 48    Finally, defendant contends that he did not receive a fair trial because the circuit court committed several actions indicative of it not being a fair arbiter. Specifically, defendant argues that the court: (1) speculated about whether the State had rebuttal witnesses who were unavailable; (2) refused to view the full video evidence during the motion to quash arrest and suppress evidence; and (3) recollected incorrect evidence that affected his guilty finding. He contends these errors cumulatively denied him a fair trial.

¶ 49    The State responds and defendant has acknowledged that he did not properly preserve any of these issues for review. Our supreme court in *People v. Enoch*, 122 Ill. 2d 176, 185-86 (1988) held that the failure to both object at trial and include an issue in a posttrial motion forfeits review. Defendant argues that this court can review the alleged errors under the plain error rule.

¶ 50    The plain-error doctrine is codified in Illinois Supreme Court Rule 615(a), which states, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a). Plain errors may be noticed when a "clear or obvious error occurred" and "the evidence is so closely balanced that the error alone

threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or if the error is "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). A defendant raising a plain-error argument bears the burden of persuasion. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). The first step in plain-error analysis is to determine whether there was error at all. *People v. Walker*, 232 Ill. 2d 113, 124 (2009).

¶ 51    Defendant first argues that the circuit court "relied on non-existent evidence" to find him guilty. Defendant argues the State failed to present rebuttal evidence to refute Carr's testimony that he was an invitee on Carr's property. He contends the court's "own words" established that it believed the State had rebuttal witnesses who could present contrary testimony, but were simply unavailable. We previously found that the State was not required to present rebuttal evidence negating the invitee exception and, therefore, no error could occur. Nevertheless, defendant is simply cherry picking the court's statement that "perhaps, the State presenting someone in rebuttal evidence to testify that, perhaps, [defendant] did not have Mr. Carr's permission to possess that gun on Mr. Carr's property, I would have not expected anyone to have been available to present that testimony." Immediately thereafter, the court explained:

> "But the fact that I did not believe Mr. Carr, is not just a function of listening to his testimony and not believing him. Although it was part of it; *but all of the circumstances, was very clear*; and the video evidence from the Officers['] body cameras, makes it clear that [defendant] did not have anybody's permission to have that gun on Mr. Carr's property at all, because if he had, he would not have conducted himself in the manner in which he did." (Emphasis added.)

¶ 52    This statement by the circuit court confirms that Carr was an incredible witness such that rebuttal testimony was not required and that the court specifically relied on the evidence at trial to find defendant guilty. We find no error.

¶ 53    Defendant also argues the circuit court erred when it refused to review in full Officer Ferrantella's body camera video footage at the hearing on his motion to quash arrest and suppress evidence. During cross-examination of Officer Filetti, the State, with defendant's agreement, asked to publish the body camera footage. The following colloquy occurred:

    "Q [State]: And is this Officer Ferrantella's body camera video previously marked

    as People's Exhibit No. 1?

    A. [Officer Filetti]: Yes.

                    (Whereupon a video was played.)

    THE COURT: You know what, I'm done. I don't have enough time for this.

    [State]: I'm sorry, Judge.

    THE COURT: Do you have any further questions, Mr. Mack? Your exhibit is in

    evidence.

    [State]: Okay."

¶ 54    As we noted, the burden of persuasion rests with the defendant. *Thompson*, 238 Ill. 2d at 613. The above colloquy makes unclear whether only a portion of or the entire video footage played before the circuit court. What is clear is that the video footage was admitted into evidence and the circuit court specifically stated in its findings at the close of trial that it relied on the footage, among other evidence, to find defendant guilty. Defendant cites *People v. Mitchell*, 152 Ill. 2d 274 (1992) to argue that the circuit court must consider all the evidence presented in determining the matter before it. Defendant has not persuaded this court that the circuit court failed

to consider all the evidence presented. Further, *Mitchell* is not applicable, as it involved a defendant's claim that the circuit court failed to consider the crux of his defense during his motion to suppress. *Id*. at 323.

¶ 55    In this case, the record shows Officer Ferrantella's body camera video was admitted into evidence and played at both the hearing on defendant's motion to quash arrest and suppress evidence and at trial. In addition, the circuit court viewed at trial the body camera footage of Officer Bandola and Sergeant Zattair. Defendant has not demonstrated that the circuit court relied on improper or incomplete evidence in its guilty determination. We find no error occurred.

¶ 56    Lastly, defendant argues the circuit court erred when it relied on an incorrect recollection of the evidence. When the court denied defendant's posttrial motion, it made an incorrect factual assertion that he was found hiding underneath a car. However, the record shows that defense counsel immediately corrected the circuit court regarding the fact defendant hid underneath a car. The court also found defendant guilty of possessing a weapon in a public alley, although it later vacated these findings.

¶ 57    Defendant cites *People v. Miller*, 2013 IL App (1st) 110879 in support of his argument that the circuit court misapprehended the trial evidence. In *Miller*, which involved a stolen car, the defendant claimed that the circuit court erred when it relied on a mischaracterization of the victim's testimony. The State conceded that the circuit court misspoke when it stated that the victim testified the steering column was peeled, which is a characteristic of a stolen vehicle. *Id*. ¶ 42. During closing argument, the State argued that the victim observed that the vehicle's steering column had been peeled. The victim, however, had not testified that the vehicle's steering column had been damaged. *Id*. ¶ 44. The appellate court found that the circuit court erred when it stated that the victim testified that the steering column had been peeled. *Id*.

¶ 58 Contrary to *Miller*, the circuit court's mistaken statement that defendant had been found hiding underneath a car did not form the basis of the guilty verdict. Further, although the court made incorrect guilty findings with respect to possessing a gun in a public alley, the court later vacated those counts and corrected the error. In sum, the circuit court's rulings were proper because the mistakes were either corrected or were not of enough significance to overcome the presumption that it relied upon incorrect evidence in determining its verdict. We find no error.

¶ 59 Accordingly, because we have found no error, there is no plain error. See *People v. Wilson*, 2017 IL App (1st) 143183, ¶ 25. Defendant's claims are thus forfeited. *Id.*

¶ 60                                                    CONCLUSION

¶ 61 We affirm the judgment of the circuit court of Cook County.

¶ 62 Affirmed.